HOOD, Judge.
This action was instituted by Thomas H. Jenkins and Olivia A. Jenkins, husband and wife, to recover damages for personal injuries allegedly sustained by Mrs. Jenkins when a Greyhound bus in which she was riding as a passenger collided with an automobile being driven by Alfred J. Loup, Sr. The suit was instituted against Greyhound Lines, Inc., Edgar Giles Jones, the driver of the bus, Alfred J. Loup, Sr., and the latter’s insurer Allstate Insurance Company.
The case was tried by jury, and the trial resulted in the rendering of the following special verdict:
“1. Was Edgar G. Jones negligent in the operation of the bus he was driving and, if so, was his negligence a proximate cause of the accident ?
Answer Yes
“2. Was Alfred J. Loup, Sr. negligent in the operation of the automobile he was driving and, if so, was his negligence a proximate cause of the accident ?
Answer No
“3. What was the amount of the damages, if any that was sustained by Olivia A. Jenkins as a result of the accident ?
Answer None
4. What was the amount of the damages, if any, that were sustained by Thomas A. Jenkins as a result of the accident?
Answer None
Pursuant to that special verdict, judgment was rendered and signed by the trial court in favor of defendants, rejecting plaintiffs’ demands, and plaintiffs have appealed.
On this appeal no question is raised as to the findings of the jury that the driver of the bus was negligent or that defendant Loup was free from negligence. The only issues presented here are: (1) Did the jury err in finding that Olivia A. Jenkins and Thomas H. Jenkins sustained no damages as a result of the accident? and (2) did the trial judge err in refusing to give plaintiffs’ requested charge No. 4 to the jury?
The accident occurred at about 11:00 a. m. on September 16, 1963. At that time *392 Mr. and Mrs. Jenkins were riding as fare-paying passengers on a Greyhound bus which was being driven by defendant Jones in an easterly direction on U. S. Highway 90. Plaintiffs were seated on the left side of the bus, two rows behind the driver, Mrs. Jenkins being seated next to the window of the bus and her husband being seated beside her next to the aisle. When the bus reached a point about two miles west of Sulphur, Louisiana, it ran into the rear of the Loup automobile, which automobile was ahead of and was traveling in the same direction as was the bus. The bus stopped within a few feet after it struck the car. The automobile ran off the south side of the highway after the collision occurred, and it came to rest against a tree a little more than 120 feet southeast of the point of impact. The Loup automobile was damaged extensively as a result of the accident, but the bus was not damaged at all.
Mrs. Jenkins testified that the collision caused her neck and left shoulder to strike the left side of the bus and her head to strike the back of the front seat. She stated that she was not thrown from the seat of the bus, but that her head hit “pretty hard” against the back of the seat which was just ahead of her, and that the blow either knocked her unconscious or dazed her. Mr. Jenkins testified that his wife “was knocked out of her seat,” and that “she was thrown forward into the other seat,” and that she was knocked “temporarily unconscious” when the accident occurred.
William E. Matthews, an attorney from Houston, Texas, was a passenger on the bus when the accident occurred. He was seated on the right side and mid-way between the front and back of the bus. He testified, “I certainly wasn’t thrown from my seat or anything * * *. We were riding along talking, and I knew the bus stopped suddenly, and in the sense that I was kind of moved. I mean I knew someone had put on the brakes. It wasn’t like you were just slowing to a stop. But there wasn’t any crash or collision, or I wasn’t thrown forward or knocked around.” He also stated, “We were just brought to a sudden stop. I would be very surprised to hear anyone say they were hurt. I didn’t hear anyone say it. Everyone was sitting in their seats.”
Mrs. Ruby Miguez also was a passenger in the bus when the accident occurred. She was seated on the right side and about three seats from the front of the bus. With reference to the severity of the impact she testified, “I felt nothing at all myself,” and “I felt no jolt whatsoever myself personally.” She stated that she was not thrown around or pitched forward, that if her eyes had been closed she would not have realized that the bus had hit anything, and that no one on the bus said they had been hurt.
Shortly after the accident occurred the bus driver asked the passengers in the bus to sign a report of the accident, and Mr. and Mrs. Jenkins each signed such a report. On these reports the question was asked “Were you injured in this accident?” and each of the plaintiffs answered this question, “Don’t know.”
Mrs. Jenkins did not seek or obtain medical treatment on the date the accident occurred. Three days after the injuries allegedly were sustained, however, she consulted her family physician, Dr. Robert O. Duncan, a surgeon, who immediately made a clinical and x-ray examination of her. He testified that he was unable to find any objective signs of injury, and he concluded that “this was just some sore muscles that would clear up within a week or two or three or a very short time.” He saw and treated Mrs. Jenkins on five other occasions after the initial examination, the last being on October 31, 1963. He was unable to find any objective signs of injury, however, and he finally concluded that her problem was “mainly psychic overlay type thing.” He referred her to Dr. Jerome W. Ambrister, an orthopedic surgeon.
Dr. Ambrister examined Mrs. Jenkins on November 4 and again on November 11, 1963. He testified that she had many complaints but that he was unable to find any objective signs of injury or any explanation *393 for the complaints, except that she had a scoliosis of the mid-dorsal region which “possibly” could be attributed to spasm. He stated that he felt “that her symptoms were either consciously or unconsciously being exaggerated,” and “that if she had any resulting disability, or any trouble referable to this injury, that it was being grossly exaggerated, magnified.”
Mrs. Jenkins did not seek any further medical attention for more than seven months after being examined by Dr. Am-brister, although she states that she continued to suffer from her injuries and was in such pain that she could not perform her regular household chores. Finally, on June 15, 1964, almost 10 months after the accident occurred, she consulted Dr. C. L. Robertson, a neurological surgeon, who testified that on that date he found marked spasm of the muscles of the shoulder girdle and the posterior aspect of the neck on the left side. He concluded that “she had a rather severe cervical sprain,” and that according to her history there was nothing else he could attribute it to except the bus accident. He stated that it takes a very strong impact or trauma to produce a sprain of that type.
Dr. Robertson hospitalized Mrs. Jenkins from June 22 to July 20, 1964, discharging her on the last mentioned date as being “considerably improved, but * * * not yet symptom free.” He hospitalized her again from August 11 until September 1, 1964, and a third time from June 2 to June 12, 1966. He testified that “As time went on * * * the physical aspects of our findings disappeared, and it then became obvious that the thing that was perpetuating her symptoms were on this psychological basis rather than a physical basis.” He stated that she had had a psychological as well as a physical problem from the very beginning, that the physical aspects of her trouble disappeared and that since May, 1965, the psychological disturbances have caused most of her problems.
Mrs. Jenkins was examined by a number of doctors after she first consulted Dr. Robertson. Seven other doctors besides those already named testified at the trial or by deposition. These included two orthopedic surgeons, one neurological surgeon, two specialists in internal medicine and two psychiatrists. The trial lasted for a period of five days and the record is voluminous.
Dr. Norman P. Morin, an orthopedic surgeon, examined Mrs. Jenkins on June 9, 1965. He was unable to find any objective signs of injury, and he concluded that she had completely recovered from any injury which she may have sustained in September, 1963. He testified that he was unable to determine whether she had sustained an injury at all prior to his examination, but that if she had sustained one it “had to be classified as a mild one, no more than that.”
Dr. Robert H. Fain, another orthopedic surgeon, examined Mrs. Jenkins on November 2, 1965, which was two years and two months after the accident occurred. He found no muscle spasm or any other objective signs of injury, but based on her complaints he concluded that she had a bursitis of the left shoulder.
Dr. Earl H. Rafes, a neurological surgeon, examined Mrs. Jenkins on November 29, 1965, and reported that he found no neurological or neuro-orthopedic abnormalities. He testified that from a physical standpoint he could find nothing wrong with plaintiff, and that “it is apparent that this patient’s problem is primarily a functional one.”
Dr. Harold B. Lovejoy, a specialist in internal medicine, examined plaintiff on January 6 and on January 20, 1966. He found that she had a minor abnormality in a certain type of blood cell, but he attributed that to an allergic condition. He was unable to find any objective signs of injury or any explanation for her complaints.
Dr. Irving Singer, another specialist in internal medicine, saw Mrs. Jenkins on February 17, 1967, and his examination “failed to reveal any abnormality.” He testified that “there was no systemic illness present which was complicating her prob- *394 leva,” and that “she seemed to be in excellent general health, other than the complaints relating to the neck.” He stated that “I was really unable to make a coherent story of it that I could understand myself * * * I was confused and puzzled by just what had happened over this period of several years * * * the whole story seemed bizarre to me, in that the symptoms waxed and waned and the patient never did seem to really improve over a period of time, which is a little bit unusual when there are so few findings present.”
Finally, plaintiff was examined by Dr. Alan B. Brinsmade and by Dr. Gilíes R. Morin, both of whom are specialists in psychiatry. Dr. Brinsmade examined her initially on June 7, 1966, and he interviewed her every day thereafter for four consecutive days. He concluded that she had a “functional overlay” or a “secondary manifestation of a rather severe emotional disturbance,” which could have been precipitated by trauma, or it “could very well have resulted in a predisposed individual from a mere fright reaction.” He explained, however, that in order for her condition to have been caused by fright, the fright reaction would have to be of importance to her, and of perhaps a relatively sustained nature. He felt that she was not a malingerer and that the complaints were genuine.
Dr. Gilíes R. Morin, another psychiatrist, examined Mrs. Jenkins on February 21, 1967. He concluded that she had an “anxiety reaction” caused by repeated medical examinations and tension over the pending litigation. He felt that she was not suffering from a traumatic neurosis or a conversion reaction, and he stated, “Unconsciously, in my opinion, she has to justify $112,000.00 worth of suffering” and this plays an important role in her symptoms.
The testimony of plaintiffs’ family physician and of an orthopedic surgeon who examined Mrs. Jenkins shortly after the accident occurred establishes that she did not have muscle spasm or any other objective sign of injury for several weeks after the date of the accident. Of the ten doctors who testified, Dr. Robertson is the only one who found muscle spasm or any other objective sign of injury, and that finding was made almost ten months after she allegedly sustained the injury. The evidence does not show that she had any sign of injury before she consulted Dr. Robertson. Other doctors who examined plaintiff after that were unable to corroborate the finding of Dr. Robertson that she did have muscle spasm.
When the medical evidence and other testimony is conflicting as to the existence of injury, or as to the nature and severity of the injury, a determination of the issue presented must depend to a great extent upon the credibility of the witnesses. The findings of fact by a trial jury, particularly those findings which involve the credibility of witnesses, are entitled to great weight on appeal, and those findings will not be disturbed unless found to be clearly erroneous. Evers v. State Farm Mutual Automobile Insurance Company, 187 So.2d 217 (La.App. 3d Cir.1966); McConathy v. United Services Automobile Association, 188 So.2d 470 (La.App. 3d Cir.1966).
In the instant suit the jury made a special finding that neither of the plaintiffs sustained any damages as a result of the accident. As we have already noted, the evidence is conflicting as to whether Mrs. Jenkins sustained a jolt of any kind when the collision occurred, and as to whether she sustained an injury as a result of that collision. The jury had an opportunity to observe the demeanor of plaintiffs and the other witnesses who testified at the trial, and we cannot say that it erred in finding that Mrs. Jenkins did not sustain any injuries as a result of the above described accident.
During the trial of the case, plaintiffs requested that the trial judge give the following special charge (Requested Charge No. 4) to the jury:
“If you believe from the testimony of the medical experts and the lay witnesses *395 that it has been established that Mrs. Jenkins did sustain some injuries when the Greyhound Bus collided with the Loup vehicle, then the force of the collision, whether you consider it to be minimal or maximal is of no material importance.”
The trial judge refused to give this special charge. Plaintiffs contend that they have been prejudiced by that ruling, and that the case should be remanded to the trial court for a new trial.
Plaintiffs base their argument on the case of Seegers v. State Farm Mutual Automobile Insurance Company, 188 So.2d 166 (La.App. 2d Cir.1966). We agree with the views expressed by our brothers of the Second Circuit Court of Appeal in that case. There, however, the evidence establishes that plaintiff had sustained some injury, and the court merely held that damages could not be measured in direct proportion to the force of the collision.
In the instant suit the jury has found, and we affirm, that no injury was sustained by Mrs. Jenkins as a result of the collision, and that plaintiffs thus are not entitled to recover any damages at all. The jury, therefore, was not confronted with the question which was presented in the Seegers case, that is whether the force of the collision should be considered in fixing the amount of damages which should be awarded. We think the force of the collision is a material fact which the trial court or jury may and should consider in determining whether any injury at all was sustained, but if it is established that some injury was sustained then we agree that the force of the collision should not be considered as a measure of the damages which should be awarded.
We find no error on the part of the trial judge in refusing to give plaintiffs’ Requested Charge No. 4.
For the reasons herein set out, the judgment appealed from is affirmed. The costs of this appeal are assessed to plaintiffs-appellants.
Affirmed.