188 So.2d 470 (1966)
Kenneth S. McCONATHY et al., Plaintiffs and Appellees,
v.
UNITED SERVICES AUTOMOBILE ASSOCIATION et al., Defendant and Appellant.
No. 1747.
Court of Appeal of Louisiana, Third Circuit.
July 1, 1966.
Rehearing Denied July 28, 1966.
Stafford & Pitts, by John L. Pitts, Alexandria, for defendant-appellant.
Ted R. Broyles, Leesville, Knight & Knight, by Herschel N. Knight, Jennings, for plaintiffs-appellees.
*471 Before TATE, HOOD and CULPEPPER, JJ.
CULPEPPER, Judge.
This is a suit by Mr. and Mrs. Kenneth S. McConathy to recover damages for the death of their 13-year-old son, Michael McConathy, who was killed in a collision between an automobile and a motor bike. The automobile was driven by the defendant, Miles M. Hays, and insured by the defendant, United Services Automobile Association. The motor bike was being operated by a 14-year-old boy named Michael Bolton. Plaintiffs' son was riding the bike as a passenger behind the driver. The case was tried twice before a jury. In the first trial, the jury was unable to reach a verdict and a mistrial was entered. On the second trial, the jury awarded Mr. McConathy $15,900 (including funeral expense), and Mrs. McConathy $15,000. The defendants appealed.
The principal issue is the length of the skid marks left by the Hays vehicle, indicating its speed.
The accident occurred in a suburban area near Leesville, on a two-lane, asphalt, state highway. The speed limit is 60 miles per hour. The road runs north and south and is straight, and relatively level, with no obstructions to view, for a considerable distance north and south of the scene of the accident. Along the east side of the highway are several residences, one of which is the McConathy's. The collision occurred at their driveway.
It was Christmas Eve, December 24, 1963, at about the noon hour and the weather was clear. Mr. Hays was driving his 1963 Oldsmobile in a southerly direction. He testified he was traveling about 60 miles per hour; as he came over a little hill he saw the motor bike quite some distance ahead, traveling south along the right-hand edge of the pavement; at first he thought it was a boy for whom he had purchased a Christmas present; he took his foot off the accelerator, intending to pass the boys and stop ahead of them; as he approached nearer, he saw that it was not the boy for whom he had a present; he then blew his horn and started moving to the left of the road to pass the motor bike; he was uncertain as to whether he accelerated to pass, but says he was going about 50 miles per hour; as he moved into the passing lane, the motor bike suddenly made a "fairly abrupt turn" to the left, toward the driveway of the McConathy residence; he applied his brakes and tried to turn to the left; when he reached a point about opposite the McConathy driveway the motor bike struck the right end of his front bumper. The Hays automobile then continued off the east side of the pavement into a shallow ditch, where the front wheels struck some sand and the rear spun around, causing the vehicle to come to rest in the ditch facing in a northerly direction.
Both boys were killed instantly. Hays is the only living witness to the accident. It is obvious that the negligence of the Bolton boy, in suddenly turning the motor bike to the left, directly into Hays' path, was a substantial cause of the accident. The only real issue on appeal, as regards liability, is whether Hays was also negligent in traveling at an excessive speed.
Plaintiff contends the preponderance of the evidence shows that the Hays vehicle left skid marks totaling approximately 247 feet, which would indicate that Hays was traveling well in excess of 60 miles per hour. A survey, prepared at plaintiff's request, shows certain mailboxes, driveways and fences used by plaintiff's witnesses to describe where the skid marks began and ended. As relevant here, this survey shows 3 mailboxes on the east side of the highway, a distance of 153 feet north of the center line of the McConathy's driveway, and a distance of 244 feet north of the Karamales fence line, opposite which the Hays vehicle came to rest; also a gravel road (leading from the east side of the highway to Pine Forrest Subdivision), the center line of this road being 130 feet north of the center line *472 of the McConathy drive, and about 230 feet from where the automobile came to rest; also the Karamales' driveway, on the east side of the highway, 115 feet south of the McConathy drive. (The automobile came to rest in the ditch just north of the culvert under this drive.)
The plaintiff called a number of witnesses who testified that the skid marks started near the mailboxes. Mr. Wayne Hamon, who lives in the area, testified he arrived at the scene immediately after the accident and that the skid marks started "in the neighborhood of" the mailboxes and the "project road". (The Pine Forrest Subdivision Road.)
Mr. Archie Lee Martin, of the Leesville City Police, testified he made no measurements, because this accident fell within the jurisdiction of the state police, but that he remembered the tire marks began near the mailboxes.
Mr. John Craft, sheriff of Vernon Parish, in which the accident occurred, testified he arrived shortly after the accident and that the skid marks started "at a place where there are 2 or 3 mailboxes."
Reverend Aubrey Boswell, a Baptist minister in Leesville, was one of the first at the scene and he testified the skid marks started about at the mailboxes.
Mr. Pete Fynn, a friend of the McConathy family, testified the skid marks started opposite the corner of the A. J. Hodges fence, which is just north of the mailboxes.
Mr. Robert L. Coburn, a retired postal clerk, who now works as a private investigator, testified that 2 days after the accident he went to the scene with plaintiff's attorney. Using a steel tape, he measured 156 feet of skid marks from the point where they began to the place where they left the pavement. The evidence does not show the exact distance from the point of impact to the point where the skid marks left the pavement, south of the McConathy driveway. But, from pictures filed in evidence (p-13 and p-14), we estimate this distance to be no more than 30 feet. Using the state troopers' measurement of 69 feet as the distance from the point of impact to the front of the automobile where it came to rest, we see that, according to Coburn's measurements, there was a total of at least 195 feet of skid marks.
Plaintiff also called as a witness Mr. C. S. Middleton, who retired as a major after over 20 years of service with the Louisiana State Police. While with the state police he taught in traffic safety schools and assisted in the preparation of stopping distance charts used by the state police. After retirement, Middleton started an investigating agency, specializing in automobile accidents. Using an automobile similar to the one driven by Hays, Middleton conducted actual experiments or tests at the scene. He said that at a speed of 60 miles per hour he applied his brakes at the mailboxes and skidded 103 feet. At 70 miles per hour he skidded 112 feet. In neither instance did he reach the McConathy driveway. On being advised, during cross-examination, that the chart in Blashfield, Automobile Law & Practice, Vol. 9-C, Section 62-67, shows that an automobile with excellent brakes on a good surface requires 160 feet of braking distance to stop at 60 miles per hour, Middleton testified that there are many different charts which vary substantially; and that, of course, there are also differences in tires, road surfaces, climatic conditions, reaction time of drivers, etc.
Frankly, we are unable to reconcile the charts with Middleton's very short braking distances during these tests. For instance, in addition to the Blashfield chart, the chart set forth in Driver's Guide, Department of Public Safety, Driver's License Division, State of Louisiana, at page 24, shows the braking distance at 60 miles per hour as 185 feet; and at 70 as 251 feet. However, this was testimony the jury could consider. Furthermore, even without it, there is sufficient evidence on which the jury could have found the skid *473 marks were long enough to show a speed of over 60 miles per hour.
Worthy of mention, as facts which the jury could have considered in determining Hays' speed, are the state troopers' measurements that from the point of impact it was: (1) 43 steps, 129 feet, to Mike McConathy's body; (2) 42 steps, 126 feet, to Mike Bolton's body; and (3) 53 steps, 159 feet, to where the motor bike came to rest. These facts indicate a very violent impact. Also, after this impact, the vehicle ran into sand in the ditch and spun around.
The defense rests largely on the testimony of the 2 state troopers, W. G. Gordy and Wilfred D. Davis, who investigated the accident immediately after it occurred. These officers found an indentation in the asphalt at the point of impact, which was about in the center of the north-bound lane of traffic and opposite the McConathy driveway. Both troopers "stepped off" the length of the skid marks. They testified it was 27 steps, or 81 feet, from the point of impact back north to where the skid marks began; and 23 steps, or 69 feet, from the point of impact to the front of the Hays automobile. Thus they found total skid marks of 150 feet. From a chart, used by the state police for this purpose, Gordy estimated the speed of the Hays automobile at 57 to 60 miles per hour; and Davis at 55 miles per hour.
The defense certainly makes a persuasive and respectable argument that the testimony of the 2 state troopers who, pursuant to their duty to do so, made a disinterested and thorough on-the-spot investigation, is entitled to more weight than the testimony of plaintiff's witnesses; that the latter were, respectively, friends who made only causal inspections of the skid marks, and a paid investigator and a paid accident analyst. Nevertheless, the issue presented here is purely factual. It depends largely on the credibility of witnesses. The jury could have believed plaintiff's witnesses that the skid marks started near the mailboxes, and were 244 feet in length. It could have believed Coburn, who measured with a tape, that the skid marks were at least 195 feet long. Under the charts mentioned above, either distance would indicate a speed of over 60 miles per hour. There is clearly sufficient evidence which, if believed by the jury, could support its decision. Our jurisprudence is established that the jury's findings of fact, particularly those involving credibility of witnesses, will not be disturbed on appeal unless clearly erroneous. Richoux v. Grain Dealers Mutual Insurance Co., 175 So.2d 883 (La.App. 3rd Cir. 1965); Martin v. Le Blanc, 157 So.2d 283.
Defendant contends the award of $15,000 in general damages to each parent is "enough too high to justify some reduction." The facts show that this 13-year-old boy was the McConathy's only child and that he was a well-rounded boy of whom his parents could be justly proud.
The defense cites a number of cases in which the awards to a parent for the death of a child ranged from $7,500 to $12,500. Honeycutt v. Indiana Lumbermen's Mutual Ins. Co., 130 So.2d 770 (La.App. 3rd Cir. 1961), awarded $7,500; Himes v. Avenger, 85 So.2d 304 (La.App. 2nd Cir. 1956), awarded $10,000; Palmer v. American General Ins. Co., 126 So.2d 777 (La.App. 1st Cir. 1960), awarded $12,500; and Randall v. Baton Rouge Bus Company, 240 La. 527, 124 So.2d 535 (1960), awarded $12,500.
The plaintiff cites several additional cases where $12,500 was awarded to each parent. Renz v. Texas and Pacific Railway Company, La.App., 138 So.2d 114; Fontenot v. Wood, La.App., 140 So.2d 34; Borey v. Rood, 140 So.2d 158. Apparently no case in this state has as yet awarded over $12,500 to each parent for the death of a child.
Under the recent Supreme Court decision in Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149, as clarified in Ballard v. National Indemnity Company of Omaha, Neb., 246 La. 963, 169 So.2d 64, we are constrained to consider the awards in previous similar cases only to determine *474 whether the award in the instant case is so excessive as to constitute an abuse of the "much discretion" of the jury as to quantum. In view of the previous awards of $12,500 to each parent, we do not think it was an abuse of such discretion to award $15,000.
For the reasons assigned, the judgment appealed is affirmed. All costs of this appeal are assessed against the defendant appellant.
Affirmed.

On Application for Rehearing.
En Banc. Rehearing denied.