TUCKER, Judge.
This is a wrongful death action by Leonard Charles Yates and his wife Patsy *304 Ruth Townley Yates for damages for the death of their five year old daughter, Kimberley Michelle Yates, on March 31, 1968, when she was struck attempting to cross Gibbens Payne Drive in Baker, Louisiana, by a pick-up truck owned by M & N Con-sructors, Inc., but operated by Tony Lynn Kimble, the minor son of Tony Hastings Kimble, employed by M & N Constructors, Inc., as a superintendent. Tony Lynn Kim-ble reached his majority after the accident. Plaintiffs charge defendant Tony Lynn Kimble with negligence causing the death of their daughter, and allege that his negligence is imputable to his father inasmuch as he was a minor living with his father at the time of the fatal accident. In addition to the Kimbles, father and son, plaintiffs join in as parties defendant M & N Constructors, Inc., the owner of the truck which was an instrument in the death of Kimberley Yates and which they had assigned to Tony Hastings Kimble for business and limited personal use, and M & N’s insurer, Argonaut Insurance Companies.
Plaintiffs sued defendants in solido for the following items of damage, plus legal interest from the date of judicial demand until paid:
Physical pain and suffering of Kimberley Yates who lived approximately twenty-five minutes after the accident . $ 15,000.00
Mental pain, anguish, and shock of Patsy Ruth Townley Yates who was In her ninth month of pregnancy at the time of the accident and had to be hospitalized as a result of It . 40,000.00
Loss of love and affection sustained by Patsy Ruth Townley Yates . 35,000.00
Loss of love and affection sustained by Leonard Charles Yates . 35,000.00
Medical and funeral expenses . 1,000.00 $126,000.00
Argonaut Insurance Company and M & N Constructors, responded to plaintiffs’ petition by moving for a summary judgment in their favor, asking that the demands against them be rejected as a matter of law in that the person causing the death of Kimberley Yates was not covered under the insurance policy applying to the company truck involved; that the driver had no connection with M & N Constructors, Inc., whatsoever, and that, therefore, M & N can have no vicarious liability for the Kimble boy’s delicts. From a summary judgment in favor of defendants plaintiffs appealed to the First Circuit Court of Appeal, which reversed the judgment of the lower court and remanded the case on the basis that the evidence and the pleadings supporting the motion for summary judgment disclosed a question of material fact with reference to the use of company vehicles by the supervisory personnel and the scope of limitation imposed upon such use.
After trial duly had in the lower court judgment was rendered on the merits dismissing the suit against M & N Constructors, Inc., and Argonaut Insurance Companies at plaintiffs’ costs, and against defendants Tony Lynn Kimble and Tony Hastings Kimble in solido awarding plaintiff Leonard Charles Yates the sum of Eight Thousand Three Hundred and Fifty and 47/100 ($8,350.47) Dollars and awarding plaintiff Patsy Ruth Townley Yates the sum of Seven Thousand Five Hundred Dollars ($7,500.00) plus legal interest from the date of judicial demand until paid, and for all costs.
From this judgment plaintiffs have appealed alleging error by the lower court in dismissing their suit against M & N Constructors, Inc., and Argonaut Insurance Company, contending that coverage was provided in the instant suit under the “omnibus clause” of the insurance policy in effect at the time of the accident. Plaintiffs also ask for an increase in quantum.
It is agreed that the only liability which Argonaut Insurance Companies could have in the premises under the Comprehensive Automobile Liability Insurance Policy which it issued to M & N Constructors, Inc., covering its fleet of automobiles and truck is as follows:
“C. Bodily injury, or
“D. Property damage
*305 “II. Persons insured:
Each of the following is an insured under this insurance to the extent set forth below:

(c) Any other person while using an automobile or a hired automobile with the permission of the named insured, provided his actual operation or (if he is not operating) his other actual use thereof is within the scope of such permission . . . ”
Argonaut Insurance Company contends, however, that Tony Lynn Kimble did not have the permission of the insured to use the M & N truck involved in the fatal accident.
The testimony reveals that M & N did not have any formal policy regarding the use of company vehicles prior to the time of the accident in question. It assigned trucks to various employees and, in the words of the vice-president, Raymond C. Penn (Tr. 118), permitted the employees a “limited personal use” of the trucks or other vehicles assigned to them. “Limited personal use” was interpreted by Mr. Penn to include driving back and forth to work, driving to the store, hauling off garbage, etc., but not for use in taking a vacation or going fishing. The whole operation of the M & N Company, including the assignment and supervision of the use of the company vehicles seems to have been casual at best.
Tony Hastings Kimble had been assigned a company vehicle for his use for the entire two to three years he had worked as a superintendent for M & N. He had used it on personal errands frequently and from time to time had given his son Tony Lynn Kimble permission to use it for personal objectives of his own. Tony Lynn Kimble had been well known to Mr. Penn ever since he was a small child. He had in fact worked for M & N in the summer of 1967; so there can be no doubt of Mr. Penn’s recognition of Tony Lynn when he saw him driving the M & N truck three or four months prior to the fatal accident and little doubt of the meaning of his remarks later to Tony Hastings Kimble telling him not to let his son drive the company truck. In his own deposition taken about five months after the accident Mr. Penn is quoted as having said “ . . . I had cautioned him about his son driving the truck and told him to never let his son drive the truck again.” (p. 7, Penn deposition) In the same deposition in response to the question whether or not he had instructed Tony Hastings Kimble that his son Tony Lynn Kimble was not to use the truck, Mr. Penn replied again, “I was coming back from the office one Saturday morning and I seen Tony Lynn driving the pickup, and the following Monday, Tony H. Kimble, senior, was out of town, and the following Monday I told Tony that Tony Lynn was driving the truck, that I didn’t want his son back in the truck no more.” (p. 9 Penn deposition; Tr. 123). Mr. Penn was quite definite in the import of his words to his employee Tony Hastings Kimble with reference to Tony Lynn’s driving of the company truck. On page 132 of the record of this case it is reported, “I, I informed Tony that the kids was not supposed to use the truck. He’s the only one I informed. Q. But you did specifically tell him that his son, and namely Tony Lynn, was not to drive it? A. Right.”
On the trial almost three years after the accident Mr. Kimble, the father proved to be a reluctant witness, answering the question put to him as follows:
“Q. Now following the time that Mr. Penn saw Tony Lynn driving your truck on Plank Road, do you recall the conversation which you and he had the following Monday morning ?
A. I don’t think it was very much conversation. All he told us, he didn’t say definitely for me not to let him drive. He said, I wish you wouldn’t.
*306 Q. —Did he give you any reason for that?
A. I, on account of the company’s truck.
Q. But he just told you that he’d rather that . . .
A. Rather that Tony not drive the vehicle ?
(Answer inaudible to reporter who asked him to repeat it)
Q. I said the words were he, he would
A. I said that he, he, not definitely, he never did tell me that, not, to let, let him definitely not, not let him drive. If that’s what you .
Q. Well my question I think was, did the words that he used were, he had rather you not let Tony drive the truck ?
A. Well, that’s just the way he said it.”
On cross-examination Mr. Kimble, the father, also testiifed as follows:
“Q. And it was just a couple of weeks before this accident that Mr. Penn came to you on the job and told you about seeing Tony Lynn driving the truck, wasn’t it ?
A. Yeah, about that time, I think.
Q. And he says that he told you he he didn’t want to see the boy in the truck no more.
A. He didn’t, he didn’t say words like that. He said, I’d rather for you not let him drive the truck.
Q. You understood that he didn’t want the boy to drive the truck, then, isn’t that right?
A. Well in so many words I guess that’s the way, what he meant, but he, he didn’t say it that way.
Q. Well he was your boss and he wouldn’t have said anything to you if he didn’t want him not to do it, would he ?
A. Well, I, he might not wanted to hurt my feelings, maybe that way.
Q. But he communicated to you that he’d rather not for the boy to be driving the truck ?
A. Yeah he did, sure.
Q. You heard him testify that he told you that he didn’t want to see the boy driving the truck any more, didn’t you?
A. He didn’t say words like that.
Q. Well that’s the way you recall it now, is that right? Sir?
A. Well, he didn’t say it then not like he said it here.”
Later Mr. Kimble, the father, testified again, “Well, as he told me, said I’d rather not for the boy to drive the car. He didn’t say specifically, and I didn’t even think, take it serious. I just went on like I’ve always did it.” (Tr. 159)
Tony Lynn Kimble did not seem nearly so nonchalant about his authority to use the company car. In his deposition taken less than two months after the accident he stated, “I knew I was not supposed to drive it.” (p. 2, Tony Lynn Kimble’s deposition). In his deposition taken October 8, 1968, Tony Lynn Kimble again confirmed the fact that he knew that he did not have the permission of M & N to use the company truck he was driving at the time of the accident (p. 7, Oct. 8, 1968, deposition of Tony Lynn Kimble). At the time of the trial, almost three years later, Tony Lynn Kimble testified that Raymond Penn had told his father that he was not supposed to drive the truck, although he didn’t say that he couldn’t drive it. (Tr. 35-36). Despite the equivocation apparent in the testimony quoted and summarized above there can be no doubt that Raymond *307 Penn, vice-president of M & N, in charge of its field operations, had revoked any authority Tony Lynn Kimble may have had to drive the M & N truck assigned to his father for his business and personal use.
The evidence is clear that Tony Lynn Kimble did have his father’s permission to use the M & N truck on his own personal business on the Easter afternoon on which the fatal accident occurred, but this is not sufficient to constitute a delegation of authority from the original “per-mitee”, Tony Hastings Kimble, to allow his son, the alleged second “permitee”, Tony Lynn Kimble, to use the pickup against the express prohibition of his usage of the truck, and bring the latter within the coverage of the “omnibus” clause of the insurance policy issued by Argonaut Insurance Company on the M & N vehicles. See Lóngwell v. Massachusetts Bonding & Insurance Co., 63 So.2d 440 (La.App. 1st Cir. 1953); Coco v. State Farm Mutual Automobile Ins. Co., 136 So.2d. 288, 295 (La.App. 3d Cir. 1962); Smith v. Insurance Co. of State of Pennsylvania, 161 So. 2d 903, 914 (La.App. 1st Cir. 1964); Comeaux v. Miller, 195 So.2d 168 (La.App. 1st Cir. 1967).
There is no evidence whatsoever to indicate that Tony Lynn Kimble was an employee of M & N or had any connection of any kind with M & N at the time of the accident in question. He was using the company truck on a personal mission of no benefit at all to M & N. There is no basis for which to hold M & N legally responsible for the unfortunate death of Kimberley Michelle Yates. The judgment of the lower court dismissing the suit against defendants M & N Constructors, Inc., and its insurer Argonaut Insurance Companies will be affirmed for the reasons given above.
The plaintiffs have concentrated their efforts to build their case within the rules set forth in Fontenot v. Aetna Insurance Company, 225 So.2d 648 (La.App. 3d Cir. 1969) and Coco v. State Farm Mutual Automobile Insurance Co., supra, which held that, despite an express prohibition to an original permittee to lend a car to a third person, implied authority may, nevertheless, result, if the named insured has knowledge that the original permittee has allowed others to drive regardless of the prohibition and makes no protest and takes no action after acquiring knowledge thereof. This rationale of the cited cases is not pertinent here, for the reason that, as we have indicated above, young Kimble himself knew he had no permission to drive the vehicle. The record shows that Penn, the vice-president of M & N, upon the initial occasion that he discovered his instructions were being violated and young Kimble was using the vehicle, within a reasonable time thereafter and a few weeks before the subject accident, instructed the elder Kimble that the boy should not be permitted to use the truck in the future. Therefore, it is clear that the owner and named insured, through Mr. Penn, an executive officer, protested and took action, when it became evident that his instructions were being violated. This case does not fall within the ambit of the Fontenot and Coco cases.
In regard to the amount of damages due plaintiffs by defendants Tony Lynn Kimble and Tony Hastings Kimble in solido for the death of the Yates’ 5 year old minor child, this court recognizes the considerable discretion reposed in the trial judge in awarding such damages. However, there is imposed upon this court the duty of reviewing the facts and circumstances of this case in light of the awards made in similar cases in order to determine whether or not the lower court has abused its discretion. In reviewing the authorities such as the cases of Tatum v. Parish of East Baton Rouge, 244 So.2d 913 (La.App. 1st Cir. 1971), Cheramie v. Great American Insurance Co., 198 So.2d 726 (La.App. 1st Cir. 1967), Randall v. Baton Rouge Bus Co., 240 La. 527, 124 So.2d 535 (1960), McConathy v. United Services Automobile Ass’n, 188 So.2d 470 (La.App. 3d Cir. 1966), and Sylvester v. Liberty *308 Mutual Insurance Co., 237 So.2d 431 (La. App. 3d Cir. 1970), we believe that the trial court was manifestly inadequate in its awards to plaintiffs, and that the awards should be increased to an additional sum of $5,000.00 to each plaintiff.
The judgment of the trial court will be amended by increasing the award to the plaintiff, Leonard Charles Yates, to the sum of $13,350.47, and increasing the award to the plaintiff, Patsy Ruth Townley Yates, to the sum of $12,500.00 against the named defendants, jointly, severally and in solido with legal interest from judicial demand until paid and all costs of these proceedings; in all other respects the judgment is affirmed.
Affirmed as amended.