381 So.2d 540 (1980)
S. Alan SEARCY et al., Plaintiffs-Appellees,
v.
Lucien PORTER, Jr., et al., Defendants-Appellants.
No. 14035.
Court of Appeal of Louisiana, Second Circuit.
February 25, 1980.
Rehearing Denied April 3, 1980.
*541 Bodenheimer, Jones, Klotz & Simmons by G. M. Bodenheimer, Jr., Shreveport, for defendants-appellants.
James R. Malsch, Shreveport, for plaintiffs-appellees.
Before PRICE, JONES and McCLENDON, JJ.
En Banc. Rehearing Denied April 3, 1980.
JONES, Judge.
Plaintiffs, Alan and Dannie Searcy, sue defendants, Lucien Porter; his employer, Eagle Trucking Co.; and its insurer, Commercial Standard Ins. Co., for the wrongful death of their infant son Matthew. The father, as administrator of his son's estate, also asserts a survival action on behalf of his son against these defendants. Liability is now admitted and defendants' appeal seeks only a reduction of the amount of the judgment against them. Plaintiffs answer the appeal requesting increases in certain of the awards received by them. We affirm.
On August 1, 1977, decedent Matthew Ryan Searcy was riding as a passenger in a car which was collided into by a truck driven by defendant Porter who had run a red light. Matthew, a three month old child, sustained multiple cuts, abrasions, skull fractures and brain injuries in the accident. Matthew was taken to the hospital and remained conscious for 1½ hours. He then became comatose and suffered respiratory arrest and two heart failures. Matthew was operated on in an emergency procedure to relieve severe pressure on his brain, but the procedure was not successful. Matthew died eight hours after the wreck.
The jury before whom the case was tried rendered verdict in favor of plaintiffs and against the three defendants in solido in the following amounts:
Dannie Searcy$50,000
Alan Searcy individually$48,085.20 ($40,000 as general damages and $8,085.20 as special damages)
Alan Searcy as administrator$8,000.
The judgment appealed from is the amount of the jury verdict.
Defendants urge that the general damages awarded each of the plaintiffs are an abuse of discretion and should be reduced to $20,000 each (the highest amount possible to not constitute an abuse of discretion of the jury). Plaintiffs answer the appeal urging that the father's general damage award should be equalized with the mother's, that the $8,000 survival award is inadequate, and that both awards are an abuse of the jury's discretion. The correctness of the amounts of these awards is the only issue on appeal.
Our codal guide to reviewing general damages is LSA-C.C. art. 1934(3).
"In the assessment of damages ... much discretion must be left to the [trial] jury."
The most recent Louisiana Supreme Court case analyzing this article and its application to the review of the appellate courts is Reck v. Stevens, 373 So.2d 498 (La.1979). Reck and Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976), explained that before a reviewing court can change an award made by the trial court, the record must clearly reveal that the trier of fact abused its discretion in making the award. As stated in Coco at page 335:
"We do reemphasize, however, that before a Court of Appeal can disturb an award made by a trial court that the record must clearly reveal that the trier of fact abused its discretion in making its award. [citations omitted] Only after making the finding that the record supports that the lower court abused its *542 much discretion can the appellate court disturb the award ..."
The initial inquiry to be made and the role that prior awards are to play in the inquiry was first discussed in Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149 (1963). At page 158 the supreme court stated:
"The primary question before the appellate court, then, is whether the judge or the jury in fixing the amount of the award has abused its great discretion vested in them by law ... [Prior decisional awards] relied upon may be similar in that each of them involves a similar injury such as a broken arm, the loss of an eye or eyes, or the loss of some member of the body. Thereafter, however, the similarity ceases for each case is different, and the adequacy or inadequacy of the award should be determined by the facts or circumstances peculiar to the case under consideration."
The method of using a scale of prior awards given for generically analogous injuries is condemned by Gaspard, supra, re-criticized by Coco, and exprobrated anew by Reck:
"Such a hypothetical scale of hypothetical awards cannot be used to determine whether or not this trier of fact has abused its discretion in the award to this particular plaintiff under the facts and circumstances peculiar to this case." Id. pp. 500-501.
"Thus the initial inquiry must always be directed at whether the trier court's award for the particular injuries and their effects upon this particular injured person is a clear abuse of the trier of fact's `much' discretion, La.Civ.C. art. 1934(3) in the award of damages. It is only after articulated analysis of the facts discloses an abuse of discretion, that the award may on appellate review, for articulated reason, be considered either excessive [citations omitted] or insufficient." Id. at 501.
See also Rogers v. Weiser Detectives & Security Services, Inc., 375 So.2d 942 (La.1979) and Rogers v. Weiser Detectives & Security Services, Inc., 378 So.2d 502 (La.App.4th Cir. 1979).
We, as the reviewing court, must find there has been an abuse of the trial jury's discretion before we can either raise or lower the award. To make this primary determination, the appellate court can examine prior awards only in an extremely limited role. They can be used only if the facts and circumstances of the past awards are closely similar to the award under review.
"The prior awards may serve as an aid in this determination [of whether the award constitutes an abuse of discretion] only where, on an articulated basis, the present award is shown to be greatly disproportionate to past awards (not selected past awards, but the mass of them) for (truly) `similar' injuries." Id. at 501.
If we do not find initially that the trial court's great discretion has been abused under the facts of this case, then we shall not disturb the awards for general damages.
Decedent Matthew was Alan and Dannie Searcy's youngest child. They have two older sons who were age four and seven at the time of trial, and there was no testimony as to their present inability to have future children. Dannie's sister, Alan's father, Dannie and Alan testified that for several months following Matthew's death Alan and Dannie visited his grave daily. At the time of trial (almost two years later) they still went weekly to the gravesite and trimmed the grass around it. Dannie baked a birthday cake for Matthew on what would have been his second birthday and for the past two Christmases she had a stocking for him. Both Dannie and Alan often wonder how Matthew would look and act as compared to their other boys. The other boys bring back sad memories of Matthew to Dannie because they frequently question her about their brother. Every day Dannie sees her friend's child, who is only two months older than Matthew would have been, and cannot help thinking how Matthew would look and act. Dannie testified that because Matthew was born on Mother's Day, he was a special child. He seemed to her to be much older than his real age *543 and was always alert. Alan is a registered pharmacist and active in professional organizations. The family attends Highland Baptist Church regularly. Alan participates in the YMCA's Indian Guide program which develops father-son closeness. He sets aside weekends for the boys and his wife. Testimony from a family friend and the evidence generally reveal that the Searcys are devoted parents and outstanding spouses. After the accident, however, the Searcys were transformed from:
"Real happy, energetic, outgoing people" (tr. 56)
to depressed and sad persons. The Searcys were obviously deeply affected by the loss of their son, perhaps more so than other couples would have been. We do not focus, however, on what most parents would have felt but rather on the above articulated facts and circumstances which reflect the loss to these particular parents.
Reviewing our jurisprudence, we find in Meaux v. Gulf Ins. Co., 182 So. 158 (La.App.1st Cir. 1938), $1,500 was awarded to each parent for the loss of their three month old child. In this case we also find the language that compensation for the death of an infant should not be as great as for the death of an older child. This idea was reiterated in Norton v. Argonaut Ins. Co., 144 So.2d 249 (La.App.1st Cir. 1962), which gave $5,000 to each parent for the loss of a three month old child. We do not agree with this concept, and we believe that Coco and Reck, supra, would mandate against using any such broad, hard-and-fast rule to determine damages, rather than looking at the particular facts and circumstances of this particular case.
In Bell v. Sparrow, 220 So.2d 729 (La.App.1st Cir. 1969), the amount awarded to the parents of a one-hour old infant was increased to $2,500 each. Ten Thousand Dollars was awarded to the father (the only surviving parent) of a deceased 18-month old child by this court in Winzer v. Lewis, 251 So.2d 650 (La.App.2d Cir. 1971). The parents of a five-year old wrongful death victim had their awards increased to $13,350 for the father and $12,500 for the mother in Yates v. Kimble, 256 So.2d 303 (La.App.1st Cir. 1971). In Gonzales v. Xerox Corp., 329 So.2d 818 (La.App.1st Cir. 1976), $25,000 was awarded to each parent on account of the death of their four-year old child. The parents of two children, aged two and three years, received $15,000 per child in Cain v. Houston Gen. Ins. Co., 327 So.2d 526 (La.App.2d Cir. 1976). This award was made in the appellate court after reversing the trial court on liability, and there was not one word in the opinion about the relationship between the parents and the children.
In making an award to parents because of the wrongful death of their child, the shrinking value of the dollar may and should be taken into account. Johnson v. International Ins. Co., 347 So.2d 1279 (La.App.1st Cir. 1977).
None of the above cases cited had the specifically articulated facts aforementioned which serve to show the extenuating circumstances of this particular case. The problem of assessing general damages for loss of love and affection was stated in Dyson v. Gulf Modular Corp., 345 So.2d 1222 (La.App.1st Cir. 1977), at p. 1225:
"Love and affection are by their very nature subjective and the degree of devotion one has for another is an intangible human trait which, for the purpose of compensation, must be measured by objective standards. While it is difficult to say whether this is a true measure of one's attachment to another, it remains in reality the only practical means available to our courts. Accordingly, the visible manifestations utilized to determine love and affection between a parent and child are those interactions between members of the family which tend to reflect the closeness of the family unit, the congeniality between its members, their common interests, and generally, the type of treatment and conduct which not only engenders love and affection but nurtures it to its fullest extent."
We find the facts and circumstances here show a great deal of love and affection existing between the Searcys and their deceased son. Their conduct was of the type *544 to engender love and affection and nurture love to its fullest extent.
Under the guidelines of Reck, supra, we find there has been no abuse of discretion in the amounts awarded to plaintiffs. Since there is no abuse of discretion, we need not reach the issue of what would have been the highest possible amount to which the awards could have been lowered.
Alan Searcy complains his general damage award should be raised to equal that of his wife. Plaintiff-appellee does not call the award of $10,000 less to him than to his wife an abuse of the trial court's discretion but only hypothesizes that the trial jury must have confused special damages with general damages and considered the $48,085 total given Alan Searcy as comparable to the $50,000 given Dannie Searcy. He contends since he had $8,085 in special damages, his $40,000 general damages should be increased by $10,000 to equalize his award with his wife's award, or so the plaintiff speculates. No cases are cited to show us that the $40,000 awarded to Alan Searcy constitutes an abuse of discretion. Under the language of Reck, supra, and under the facts earlier articulated, Mr. Searcy's general damage award cannot be said to be an abuse of discretion. Awards cannot be lowered or raised simply because a party believes the jury confused the award, but only if there has been an abuse of discretion.
Plaintiff also complains that the amount awarded to him as administrator of his son's estate is inadequate. Plaintiff argues the $8,000 for Matthew's pain and suffering is an abuse of discretion. The record establishes that Matthew was semi-conscious for 1½ hours after the accident and was comatose for the remaining 6½ hours. Matthew's pediatrician, who was present in the emergency room with him, testified the baby responded to painful stimuli and definitely experienced pain during the time he was semi-conscious. For the remaining 6½ hours when Matthew was unconscious, he felt no pain.
The following cases are cited by plaintiff:

Walker v. St. Paul Ins. Companies, 339 So.2d 441 (La.App.1st Cir. 1976), in which a $2,000 award was given for 15 minute pain and suffering one decedent had after a wreck and $5,000 award for the 1-hour suffering of the other decedent;

Aymond v. St. Dept. of Hwys., 333 So.2d 383 (La.App.3d Cir. 1976), in which the decedent's pain prior to death after landing his car in a canal was compensated by an award of $7,500;

Hall v. St. Dept. of Hwys., 213 So.2d 169 (La.App.3d Cir. 1968), in which $2,000 was awarded for a few conscious minutes of pain the decedent suffered prior to drowning in her car; and

LeBlanc v. Estate of Blanchard, 266 So.2d 918 (La.App.4th Cir. 1972), in which $2,000 was awarded for a few conscious minutes of suffering the decedent suffered prior to drowning in her car.
Our own recent case of Marceleno v. St. Dept. of Hwys., 367 So.2d 882 (La.App.2d Cir. 1979), approved a $10,000 award for the 36-hours of pain decedent suffered while in a primary comatose state. There was evidence that decedent had groaned, occasionally moved her limbs, and her eyes on occasions responded to light.
In light of the articulated facts and circumstances of Matthew's suffering before death, and in light of the mandates of Reck, supra, we find no abuse of discretion in the trial court's award of $8,000.
The judgment is AFFIRMED at appellants' cost.
PRICE, Judge, dissenting.
I must respectfully dissent from the majority opinion. I do not agree with the holding that the age of the child should not be given consideration in the assessment of damages to a parent for loss of a child. It is more logical that the bonds of attachment to the child increase with each year of a child's age in a normal parent-child relationship. Age has always been a substantial factor in the consideration of damages for such losses in all prior decisions of appellate courts. I do not believe Coco and Reck preclude consideration of the age of *545 the child as indicated by the majority opinion.
An award of $30,000 to each parent would be more than double the amount of any prior award in a reported appellate decision in this state for the loss of a child of such a young age.
As noted in the majority opinion this court fixed an award of $15,000 for two and three-year-old children in Cain v. Houston Gen. Ins. Co., supra, in 1976.
I consider an award of $50,000 to the mother and $40,000 to the father for general damages for the death of a less than three-month-old infant an abuse of the discretion afforded the jury and would reduce the awards to $25,000 each.