413 So.2d 288 (1982)
Kim Arlene GASPARD, Plaintiff-Appellant,
v.
Larry V. BREAUX, et al., Defendants-Appellees.
No. 8677.
Court of Appeal of Louisiana, Third Circuit.
April 14, 1982.
*289 P. Michael Maneille, Lake Charles, for plaintiff-appellant.
Stockwell & Assoc., Robert S. Dampf, Lake Charles, for defendants-appellees.
Before GUIDRY, CUTRER and STOKER, JJ.
GUIDRY, Judge.
This is a suit for damages for personal injuries. Plaintiff, Kim Arlene Gaspard, instituted this suit against defendants, Larry V. Breaux, individually and in his capacity as administrator of the estate of his minor son, Gary Breaux, South City Paint & Supply Company, Inc., and its liability insurer, Continental Insurance Company (hereafter Continental), to recover damages, including past and future medical and dental expenses, resulting from a one-car accident in which plaintiff was injured. Presumably, at trial, on joint motion of the parties, Larry V. Breaux, Gary Breaux and South City Paint & Supply Company, Inc. were dismissed as parties defendants and plaintiff's suit was continued only against Continental. The trial court entered judgment against defendant, Continental, and in favor of plaintiff, Kim A. Gaspard, in the sum of NINE THOUSAND TWENTY DOLLARS ($9,020.00) with legal interest until paid and assessed all costs to the aforesaid defendant. Plaintiff has appealed seeking an increase in the amount of the award. Continental has neither answered nor appealed from the aforesaid judgment.
The facts are undisputed. On September 9, 1978, plaintiff, Kim A. Gaspard, age 17, was a guest passenger in an automobile owned by South City Paint & Supply Company, Inc. and operated by Gary Breaux, age 15. While traveling down a gravel road, Gary Breaux lost control of his vehicle when it hit a pot hole causing the automobile to slide. The automobile skidded into a ditch, traveled through the ditch, and came to a stop after the front end of the automobile went through a barbed wire fence. Although Breaux was unhurt, plaintiff's face struck the vehicle's dashboard causing injury to her teeth, gums and mouth. Plaintiff was initially taken to St. Patrick's Hospital where medical personnel referred her to her dentist, Dr. James Heard. Dr. Heard administered emergency aid by repositioning two of plaintiff's teeth which had been pushed backward, applying ice packs, and prescribing pain medication. Thereafter, Dr. Heard treated the plaintiff for her injuries over a three month period. The aforesaid dental treatment included root canal therapy on one tooth, surgical removal of *290 the root of another, and the installation of a five unit porcelain veneer bridge as a permanent replacement for plaintiff's missing and damaged teeth. Plaintiff's bridgework consists of two artificial teeth and three crowns. During the period in which the bridge was being installed, plaintiff was on a liquids only diet for approximately one month and on a soft food diet for one and one half months. During the aforesaid period plaintiff lost 13 pounds. Subsequent to the death of Dr. Heard in January of 1979, plaintiff was treated by Dr. W. Harold Schnauder, a Lake Charles dentist, who assumed Dr. Heard's practice. Dr. Schnauder testified that he examined and treated plaintiff on four occasions between March, 1980 and April of 1981. He testified that as a result of the placement of the bridge, plaintiff has experienced irritation of her gums resulting in sporadic bleeding, tenderness, and some pain and discomfort. Dr. Schnauder also indicated that since the placement of the bridge, plaintiff is required to spend more time brushing her teeth and must also floss more frequently. The record sufficiently establishes that plaintiff had beautiful, healthy teeth before the accident.
The issues presented on appeal are (1) Did the trial court clearly err in failing to award to plaintiff special damages consisting of past dental expenses incurred for plaintiff's treatment during her minority and prior to the institution of the present suit; (2) Did the trial court clearly err in failing to award an amount of special damages sufficient to cover the cost of future dental treatment; and, (3) Is the trial court's award of general damages so inadequate as to constitute an abuse of that court's wide discretion?
Plaintiff initially contends that the trial court erred in failing to award her judgment for the sum of $1433.00 in special damages representing past dental expenses incurred as a result of the accident. In denying such special damages, the trial court concluded that Kim lacked the capacity to contract at the time she received such medical and dental treatment, thus, the contract for such treatment was between Dr. Heard and plaintiff's father, Oran Gaspard, who, in fact, actually paid such expenses. The trial judge further reasoned that since Mr. Gaspard was not a party to the present suit, he could not be awarded judgment for such past medical and dental expenses. Plaintiff, however, argues that at the time of institution of the present suit, she had attained majority status, thus, her father had no real and actual interest in the suit since his right to administer her estate ceased when she became a major. In addition, plaintiff asserts that all damages for personal injuries to a minor child belong to the child. After a careful review of pertinent law and applicable jurisprudence, we conclude that the trial court was correct in its decision regarding the award of past medical and dental expenses.
In resolving the issue presented, our initial point of inquiry is whether or not the medical and dental expenses in question were chargeable to plaintiff's estate since occasioned during her minority. LSA-C.C. Article 1785 provides that a minor has not the capacity to contract but such contracts may be rendered valid by ratification. In Butto v. Central Finance Company, 73 So.2d 44 (Ct. of App. Orleans, 1954), the court, in the context of the purchase of an automobile by a minor, commented:
"Where the minor, under the contract, has agreed to make certain payments and, after attaining majority, fails to make the payments, his failure obviously cannot be looked upon as evidencing an intention to ratify. On the contrary, his failure evidences a determination that he shall not be bound by the contract. It is in itself evidence of intention not to ratify."
Applying the aforesaid principle to the present facts, we conclude that had the plaintiff contracted for her own medical and dental treatment at the time she received such treatment and elected not to pay the same, she could not have been sued for nonpayment once she became a major. Rather, her nonpayment would have evidenced her intent not to ratify the agreement *291 executed when she lacked the capacity to so contract. In further support of the conclusion that plaintiff's medical and dental expenses are not plaintiff's debt so as to mandate an award to her of past medical and dental expenses, we note that LSA-C.C. Article 1785 permits a minor to validly contract for necessaries for his support, but only if the person charged with the minor's care has neglected to do so. In the present matter, plaintiff's father willingly paid plaintiff's medical and dental expenses. In addition, we observe that LSA-C.C. Articles 1243 and 1244 provide within the context of Louisiana succession law that although collation is due for amounts expended by parents on behalf of their legitimate descendants for payment of their debts, collation is not due for expenditures by parents related to the board, support, or education of such legitimate descendants. Thus, we conclude that plaintiff's medical and dental expenses incurred as a result of the aforesaid accident were not chargeable to her estate.
LSA-C.C. Article 227 provides:
"Fathers and mothers, by the very act of marrying, contract together the obligation of supporting, maintaining, and educating their children."
The aforesaid codal authority has been interpreted by our courts as establishing the legal obligation of parents to support their children which encompasses the furnishing by parents of needed medical and dental treatment to their minor children. The aforesaid legal obligation is generally discussed by our courts within the context of cases involving child support agreements, however, the legal obligation of parents to pay for such expenses incurred by their children is well settled in a wide variety of factual contexts. Clearly plaintiff's father had a legal obligation to pay for those medical and dental services required by the plaintiff as a result of her injuries. Although her father has a right to reimbursement for such expenses, it was necessary that he join in the present suit as a party plaintiff in order to assert his right to reimbursement. Since Mr. Gaspard neither joined in the present suit nor assigned such debt to his daughter, we must concur with the finding of the trial court that plaintiff is not entitled to judgment for the dental expenses incurred during her minority and actually paid by her father, Oran Gaspard.
Plaintiff next contends that the trial court erred in failing to award in special damages an amount for future dental expenses consistent with the testimony offered by plaintiff's expert witness, Dr. W. Harold Schnauder. In this regard, plaintiff alleges that Dr. Schnauder's testimony establishes that Kim will require at least two replacement bridges in the future and that such future bridgework will include up to seven or eight teeth as well as root canal therapy on two additional teeth at a total conservative dental fee cost of $4,950.00. Thus, plaintiff argues that the trial court's award of $2500.00 in future dental expenses is so inadequate as to constitute an abuse of its wide discretion.
When questioned regarding the future need of replacing plaintiff's present bridgework, Dr. Schnauder stated:
"I would think that probably within about 10 years, a new bridge would have to be made in this area due to the recession of the gum. At Kim's age now, she will definitely get some more recession in 10 years, and the bridge would become too unsightly to warrant leaving in the mouth."
In addition, upon questioning pertaining to the need for an additional replacement bridge subsequent to the placement of the second bridge, Dr. Schnauder stated:
"I would think that probably in another 10 or 15 years, she will probably have to have this redone again."
In regard to the need for root canal therapy on two additional teeth in the future, Dr. Schnauder testified:
"It's possible. Usually in an accident case, there is a good possibility that over a period of years, due to the blow, that a tooth may gradually die, and if this would happen, then root canal procedures may have to be done."
*292 In estimating the cost of such future dental treatment, Dr. Schnauder testified that at prices existing at the time of trial, the cost of replacing a bridge would range from $325.00 to $450.00 per tooth with the cost of root canal therapy estimated at $200.00 per tooth.
Our review of the record reveals that Dr. Schnauder testified at trial that in all probability the changes in the bone structure of plaintiff's mouth and the recession of the gingiva, will require the replacement of plaintiff's bridge within a period of 10 years.[1] However, Dr. Schnauder could not definitely state that a second additional replacement bridge would be required. Further, Dr. Schnauder indicated that it was only a possibility that such replacement bridges would require the inclusion of additional teeth. In regard to the need for additional root canal therapy, Dr. Schnauder indicated that there exists only a possibility that two additional root canals would be required in the future and he indicated that a number of variables would determine if such additional work would be required. It is well settled that future medical expenses, like any other element of damages, must be established with some degree of certainty. See Sikes v. McLean Trucking Co., 383 So.2d 111 (La.App. 3rd Cir. 1980); Wilson v. MaGee, 359 So.2d 315 (La.App. 4th Cir. 1978), modified on appeal, 367 So.2d 314 (La.1979). Also, "... awards will not be made for future medical expenses which may or may not occur in the absence of medical testimony that they are indicated and setting out their probable cost." Poche v. Frazier, 232 So.2d 851 (La.App. 4th Cir. 1970), writ denied, 236 So.2d 36 (La.1970). Also, it is well established that an award for future medical expenses like loss of future wages is in great measure highly speculative and not susceptible of calculation with mathematical certainty. Edwards v. Sims, 294 So.2d 611 (La.App. 4th Cir. 1974). Considering the evidence above set forth in light of these legal principles, we cannot say that the trial court manifestly erred in awarding $2500.00 for future dental expenses.
Plaintiff's final contention is that the trial court's award of general damages in the sum of $6500.00 is so inadequate as to constitute an abuse of that court's wide discretion. In support of her argument, plaintiff cites to this court a number of cases in which the trial court awarded sums somewhat higher than that awarded by the trial court in the instant case. See Rutledge v. Sentry Insurance Co., et al, 280 So.2d 619 (La.App. 3rd Cir. 1973); Johnigan, et ux v. State Farm Mutual Automobile Insurance Co., et al, 345 So.2d 1277 (La.App. 3rd Cir. 1977); Guidry v. Missouri Pacific Railroad, et al, 366 So.2d 618 (La. App. 3rd 1978), writ denied, 369 So.2d 153 (La.1979). Prior awards may serve as an aid in the determination of whether an award under review constitutes an abuse of discretion only where the present award is shown to be greatly disproportionate to past awards for similar injuries. LSA-C.C. Article 1934(3); Searcy v. Porter, 381 So.2d 540 (La.App. 2nd Cir. 1980); St. Martin v. Maryland Casualty Co., 357 So.2d 885 (La. App. 1st Cir. 1978), writ denied, 359 So.2d 621 (La.1978). While we conclude that the trial court's award to plaintiff of $6500.00 in general damages may be on the low side, it is not so inadequate as to be less than the lowest amount which could reasonably be awarded based upon the evidence. Plaintiff also asserts that the trial court should have considered the rate of inflation when making its award. Searcy v. Porter, supra. We find no indication in the record that the trial judge failed to consider this factor. Thus, after carefully reviewing the record before us, we conclude that the trial court did not clearly err in awarding to plaintiff general damages in the sum of $6500.00.
For the above and foregoing reasons, the judgment of the trial court is affirmed. All costs of this appeal are assessed to plaintiff, Kim A. Gaspard.
AFFIRMED.
NOTES
[1] Gingiva is defined as that portion of the gums next to the exposed crown in the mouth.