532 So.2d 317 (1988)
HIGHLANDS INS. CO., Plaintiff-Appellee,
v.
MISSOURI PACIFIC RAILROAD CO., et al., Defendants-Appellants.
No. 87-1012.
Court of Appeal of Louisiana, Third Circuit.
October 5, 1988.
*318 Roy & Hattan, Candice Hattan, Lafayette, for plaintiff-appellee.
Bertrand & Soileau, Charles Soileau, Rayne, Taylor & Trosclair, Earl Taylor, Opelousas, for defendants-appellants.
Before DOMENGEAUX, KNOLL and KING, JJ.
*319 KNOLL, Judge.
The State of Louisiana, Department of Transportation and Development (hereafter DOTD) appeals an adverse judgment of the trial court which found it 35% at fault for damages Thomas Lee, Sr. (hereafter Lee) suffered at a railroad crossing on February 2, 1982, when his pick-up truck struck a Missouri Pacific Railroad Company (hereafter MOPAC) train. The crossing in question was marked with only a crossbuck warning sign, and the view of the railroad track was obstructed by a growth of trees and brush on MOPAC and private property.
Lee instituted suit against MOPAC in federal district court. Although Highlands Insurance Company (hereafter Highlands), the worker's compensation insurer for Lee's employer, next filed a subrogation claim against MOPAC in state court in St. Landry Parish, MOPAC successfully removed the action to Federal District Court. Thereafter, Lee amended his suit to include DOTD and, after Lee's action was consolidated with Highlands' in federal court, both actions were remanded to the district court in St. Landry Parish. In district court Highlands likewise amended its suit to include DOTD as a party defendant. Incidental demands filed between the defendants are not relevant to the appeal sub judice and will not be outlined herein.
Lee and Highlands settled their suits against MOPAC for $65,000 and Lee compromised his worker's compensation claim against Highlands for $100,186. After a bench trial of the consolidated cases, judgment was rendered in favor of Lee and Highlands, fixing Lee's damages at $475,211, and assessing fault as follows: 30% to Lee; 35% to DOTD; and 35% to MOPAC.
DOTD appeals, contending the trial court erred in: 1) denying its exception of prescription; 2) finding DOTD liable; 3) apportioning fault; 4) not admitting into evidence the sight distance measurements of Gary L. Todd; 5) awarding excessive and unproven damages; 6) assessing all court costs to DOTD; and 7) holding that the release executed by Lee, Highlands, and MOPAC did not also release DOTD.
We have consolidated DOTD's appeals from the suits of Lee and Highlands, and render a separate judgment in Lee v. Missouri Pacific, et al., 532 So.2d 327 (La. App. 3rd Cir.1988).
For conciseness the applicable facts will be recited under each assignment of error.

PRESCRIPTION
DOTD contends that the actions of Lee and Highlands have prescribed. It argues that Lee's supplementation of his action in federal court to include DOTD was ineffective because: 1) federal court was an improper jurisdiction to file suit against it because of sovereign immunity; 2) the State's appearance in federal court did not constitute a waiver of its sovereign immunity; 3) the transfer of the consolidated federal suit to a state district court was likewise ineffective because service of process has never been effected on the State; and 4) service of process in the federal district court was ineffective because such service was made after the running of prescription. The State also argues that Highlands' inclusion of it as a party defendant in state court does not relate back to the timely filed action against MOPAC because Highlands' action against MOPAC was a subrogation claim and DOTD "can only be liable to Highlands ... if there is a money judgment granted in favor of Thomas Lee. If Mr. Lee's suit is prescribed, Highlands can't be successful." We disagree.
The timely filing of a petition in a court of competent jurisdiction against one tortfeasor/solidary obligor, interrupts prescription as to all other joint tortfeasors. LSA-C.C. Arts. 1799 and 3503. DOTD admits that Lee and Highlands timely filed suit against MOPAC in a court of competent jurisdiction. Accordingly, the determinative issue is whether DOTD is a solidary obligor. For reasons hereinafter explained, we agree with the trial court that DOTD and MOPAC were solidarily liable. Therefore, it follows that the trial court properly denied DOTD's exception of prescription.
*320 DOTD's assertion that Highlands' suit in state court against MOPAC did not interrupt prescription because it was only a subrogation claim contingent upon Lee's suit is likewise misplaced. LSA-R.S. 23:1101 provides that an insurer may file an independent claim against a third-party tortfeasor for reimbursement. Like the disposition of Lee's claim, once Highlands established DOTD's solidary liability, DOTD's exception of prescription also fell.

DOTD LIABILITY
DOTD contends that the trial court was manifestly erroneous in finding it liable for Lee's injuries. Its argument is threefold: 1) DOTD had no duty to prevail on MOPAC to clear its right of way since the overgrowth in question was partly on the railroad's right of way and partly on private property; 2) the trial court's reliance on prior accidents at the railroad crossing in question was unjustified to support its findings that the crossing was somewhat more dangerous and, therefore, inadequately marked with a simple crossbuck warning sign; and, 3) the trial court improperly found that DOTD had notice of the dangerous condition of the railroad crossing prior to Lee's accident.
In Hebert v. Missouri P.R. Co., 366 So.2d 608, at 612 (La.App. 3rd Cir.1978), writs denied, 369 So.2d 153, 155 (La.1979), we stated:
"The duty of the Department of Highways to the traveling public is set forth in the case of Barnes v. Liberty Mutual Insurance Company, 350 So.2d 288 (La. App. 3rd Cir.1977), writ refused 352 So. 2d 239 (1977), wherein this court held as follows:
`The law is settled that the Highway Department is not responsible for every accident which may occur on the state highways, nor is it a guarantor of the safety of travelers thereon, or an insurer against all injury or damage which may result from obstructions or defects in such highways. (Citations omitted.)
As the Supreme Court stated in Standard Brands, Inc. [v. Department of Highways, State of Louisiana, et al., 339 So.2d 780 (La.1976)]:
In order to hold the Department of Highways liable for an accident caused by an unsafe or hazardous condition it must be shown that the Highway Department had prior notice, either actual or constructive, of the dangerous condition and had sufficient opportunity to remedy same or at least to alert and warn motorists of its presence and failed to do so.
`The test for deciding whether there was an unsafe or hazardous condition is whether or not the highway was maintained in a reasonably safe condition for persons exercising ordinary care and prudence.'" (Citations omitted.)
An appellate court can not substitute its findings of fact in place of the reasonable evaluation of credibility and reasonable inferences of fact which the trial court could have made in support of its finding of negligence, and the causal relation between defendant's negligence and plaintiff's injuries. Forest v. State, Through La. Dept. of Transp., 483 So.2d 1313 (La.App. 3rd Cir.), affirmed, 493 So.2d 563 (La.1986). The findings of the trial court, as the trier of fact, including the determination as to credibility and the weight given the evidence and testimony, shall not be overturned on appeal unless such determinations are clearly wrong. Fourroux v. North-West Ins. Co., 462 So.2d 1327 (La. App. 3rd Cir.), writ denied, 465 So.2d 739 (La.1985).
In the present case the trial court examined a series of photographs taken just two days after the accident, which depicted a tree line and overgrown brush located partly on the MOPAC right of way and on private property adjoining the right of way, and concluded that Lee's view and that of the train engineer was obstructed. After thoroughly reviewing the evidence presented, we conclude that the trial court's determination was not clearly wrong, particularly since Michael J. Morgan, one of the DOTD employees, testified that the department's on-site inspection on *321 November 3, 1982, approximately 9 months after the accident, also found the approach to the railroad crossing was visually obstructed.
The next question which we address is whether the trial court clearly erred when it determined that there was an unsafe or hazardous condition at the railroad crossing. DOTD argues, relying on Watson v. Illinois Cent. Gulf R.R., 355 So.2d 1366 (La.App. 1st Cir.), writ denied, 357 So.2d 1168 (La.1978), that since the obstructions were not on DOTD's right of way, it had no duty under the circumstances to Lee to remove the obstructing brush overgrowth.
DOTD misconstrues the trial court's holding. In particular, the trial court stated in its reasons for judgment:
"The brush overgrowth, some of which is on the [railroad] right of way which impaired the vision of not only the operator of the train, but also the driver of the vehicle, I find did play a part in this accident because in the absence of this brush overgrowth coupled with the overgrowth and brush and trees on the private property this accident would not have happened. With respect to the conduct of the Department of Transportation and Development whose conduct in this case lies in its responsibility to provide safe crossings to the traveling public, I find that its failure of more adequate warning signals was a cause in fact of the accident and subsequent injuries of the plaintiff."
Therefore, it is clear that the impetus for the trial court's conclusion was: considering the overgrowth, over which DOTD had no control, and the sight impairment it presented, did DOTD adequately sign the railroad crossing to alert the motoring public?
In the present case, the railroad crossing was marked as follows: 1) the standard crossbuck sign is located 10 feet from the centerline of the track and 17 feet from the centerline of the highway; 2) painted pavement markings 50 feet long are located 218 feet before the railroad crossing; and 3) a round reflectorized railroad crossing warning sign is located 361 feet from the crossing. There were no lighted warning signs or sounding of bells at the crossing.
In light of the present argument, the trial court had to determine whether this standard set of warnings constituted adequate warning to the motoring public. The trial court was aided in making this determination by the testimony of expert witnesses who analyzed the facts of this particular accident, gave opinions on the pros and cons of active (flashing lights and a cantalevered cross bar) and passive (a crossbuck sign) warning signs, weighed the cost factor of installing the various warning mechanisms, and examined the frequency of passage of the trains, as well as the volume of traffic that traversed this crossing.
As part of this analysis DOTD contends that the trial court erred in its conclusion that DOTD had prior notice of the dangerous condition and had sufficient time to remedy the dangerous crossing. The trial court relied upon testimony of prior accidents at this crossing in addressing these issues.
Testimony concerning prior accidents is admissible for the limited purpose of showing that the defendant had notice of defects or physical conditions which are dangerous. Lincecum v. Missouri Pacific R. Co., 452 So.2d 1182 (La.App. 1st Cir.), writ denied, 458 So.2d 476 (La.1984). The use of prior accidents or injuries are only admissible where the prior accidents or injuries are closely related in circumstances to the injury or hazard at issue. Miller v. Employer's Mut. Liability Ins. Co. of Wisconsin, 349 So.2d 1353 (La.App. 2nd Cir.), writ denied, 352 So.2d 235 (La.1977).
In the case sub judice Duaine Evans, a traffic engineer who testified on behalf of Lee and Highlands, brought to the attention of the trial court that by consulting State Police accident reports he found that, excluding Lee's accident, there had been 4 additional automobile/train accidents at this crossing between 1978 and 1981. Mr. Evans pointed out to the court that one of those accidents occured in the same manner as the case sub judice, and *322 the other three happened at the opposite side of the railroad crossing. Despite this, DOTD contends that even though these accident reports were filed with the State Police, it did not have notice of them. We disagree. DOTD, through its section on traffic and planning, obtained quarterly reports of all accidents that occur on state highways; only two of the accident reports uncovered by Mr. Evans may not have been available to DOTD because they occurred only in the last quarter of 1981. On this basis we can not say that the trial court erred in concluding that DOTD had, at least, constructive notice of these accidents.
The next question presented is whether the trial court erred in its conclusion that DOTD had adequate time to remedy the crossing prior to the accident. The record shows that as far back as 1974, DOTD received federal grant money in the sum of $3.5 million per year to systematically improve safety at the various railroad crossings throughout the State. Unfortunately, at the time of the accident at hand, the latest information DOTD had on accidents at this railroad crossing was that obtained in the initial fact finding period in 1974. Considering the occurrence of at least two accidents at this crossing between 1974 and 1981 of which DOTD should have been aware, we find that the trial court did not err in ruling that the State had adequate time to remedy the deficiencies relative to the warnings provided at the crossing, particularly since the State had been receiving money annually from the federal government to upgrade the safety of the various railroad crossings by installing active signals.
For these reasons, we find that the trial court was not manifestly erroneous in finding DOTD partially liable for Lee's injuries.

APPORTIONMENT OF FAULT
DOTD contends that the trial court erred in its allocation of fault. It contends that the fault of Lee and MOPAC should be increased.
The jurisprudence is clear that the manifest error rule is applicable to a fact finder's allocation of fault. Thomas v. Missouri-Pacific R. Co., 451 So.2d 1152 (La.App. 3rd Cir.1984), affirmed in part and reversed in part, on other grounds, 466 So.2d 1280 (La.1985). Accordingly, the trial court's allocation of fault will not be disturbed on appeal unless it constitutes a clear abuse of discretion. Triangle Trucking Co. v. Alexander, 451 So.2d 638 (La. App. 3rd Cir.1984).
In its oral reasons for judgment the trial court, referring to the guidelines enunciated in Watson v. State Farm Fire and Cas. Ins. Co., 469 So.2d 967 (La.1985), assessed 35% fault each to MOPAC and DOTD, and 30% fault to Lee.
In support of its argument that Lee's fault should have been higher, DOTD stresses two evidentiary items not mentioned by the trial court in its reasons for judgment. First, Ronald Jenkins, the train engineer, testified that the train was travelling at approximately 30 m.p.h. and that he began blowing the train's whistle approximately 1,490 feet from the crossing. This evidence was corroborated by two other occupants of the train. Second, DOTD contends that although the photographs depict a visual obstruction, they nonetheless show that there were gaps in the tree line so that the train should have been partially visible. Mr. Jenkins testified that on the day of the accident his train was composed of an engine, eight cars and a cabooseten cars. The train engine was likewise equipped with an illuminated fixed light.
Lee testified that he traversed the railroad crossing in question twice daily. He admitted that he knew of the existence of the railroad crossing, and that since he and his wife heard train whistles now and then from their home which was located in close proximity to this crossing, he was likewise aware that trains occasionally used the tracks. On the day of the accident Lee said he probably had his radio on and his truck windows raised. The posted speed limit was 55 m.p.h., and the approximate speed of Lee's truck was 45 m.p.h. Lee did not see the train until one or two seconds *323 prior to impact, and he could not recall hearing any train whistle or seeing a light illuminated on the train. He candidly stated that the only reason he slowed his vehicle at the railroad crossing on the day of the accident was because of inclement weather.
The trial court concluded that although Lee's actions contributed to the accident, the primary cause of the accident was the combined fault of DOTD and MOPAC. We agree. The degree of Lee's fault is well established in the record, and consists basically of his inattentiveness. However, we find it convincing that since Lee admitted slowing because of the weather conditions, that he did not hear the train whistle in time for him to bring his truck to a stop before the crossing. Assuming, however, that the train did sound its whistle, under the circumstances of this case, we conclude that the warnings were too inadequate to meet the dangers presented. The testimony of the traffic engineer, Duaine Evans, established that given the speed of the truck and train, to bring Lee's vehicle to a stop, he would have needed to see the train 246 feet away under rainy conditions and 215 feet away on dry pavement. Evans stated that his calculations at the scene of the accident revealed that on the highway at 150 feet from the track, Lee would have only had an unobstructed view toward the oncoming train of 70 feet along the rail. These statistics were unrefuted. Therefore, it is clear that what made the railroad crossing most dangerous were the obstructions which blocked the view of MOPAC and Lee. The record clearly establishes MOPAC and DOTD knew or should have known of the visual obstructions, and that passive warning signs failed to properly advise the motoring public of the dangers presented.
Therefore, after carefully reviewing the record, we can not say that the trial court was clearly wrong in assessing MOPAC and DOTD equally at fault, and in finding Lee less at fault.

EVIDENTIARY RULING
DOTD contends that the trial court erroneously excluded evidence of Gary L. Todd, its expert civil engineer and land surveyor, relative to certain sight distance calculations. These calculations were not broached during direct examination; however, on cross-examination by counsel for Highlands, the witness stated that he did not have those figures with him. On redirect examination when counsel for DOTD, who had a copy of Todd's sight distance calculations, pursued this line of questioning, the trial court excluded such evidence for the reason that it perceived Todd's testimony to be that he had not made such calculations. Nonetheless, it allowed DOTD to proffer this evidence.
The objection of Highlands and Lee at trial to the introduction of this evidence was that the documentary information was not listed on the pre-trial order, and therefore, was properly excluded.
The pre-trial order controls the subject and course of an action unless modified at trial to prevent manifest injustice. Much discretion is left to the trial judge in determining whether to modify the pre-trial order. Harper v. State Farm Mut. Auto. Ins. Co., 484 So.2d 737, 740 (La.App. 1st Cir.1986), writ denied, 489 So.2d 246 (La. 1986). We find no abuse of discretion on the trial court's exclusion of these sight distance calculations. Moreover, to the extent that DOTD's 19 photographic exhibits contain sight distance measurements, the information proffered was clearly cumulative.

QUANTUM
DOTD contends that the trial court abused its discretion in awarding excessive amounts for pain and suffering, future medical expenses, and loss of wages. The trial court awarded Lee $225,000 for pain and suffering; $83,741 for loss of wages as of the time of trial; $123,672 for future loss of wages; $35,298 as medical expenses incurred as of the time of trial; and, $7,500 for future medical expenses.

GENERAL DAMAGES: PAIN AND SUFFERING
DOTD first argues that the trial court's award of $225,000 for pain and suffering *324 was excessive. DOTD's sole objection to the general damage award is that it is not in line with other jurisprudential awards.
In making an award for general damages, a trial court must concentrate on the particular injuries involved and the effect of those injuries on the particular plaintiff involved without first resorting to prior jurisprudence. Reck v. Stevens, 373 So.2d 498 (La.1979).
At the time of the accident Lee was 49 years of age. As a result of the collision with the train he suffered an acetabular fracture of the right hip, multiple abrasions, contusions over the left anterior chest and four broken ribs on the left side. On February 2, 1982, he underwent an emergency abdominal exploratory laparotomy in which his spleen was removed. Not until February 9, 1982, when his condition was stabilized, did he undergo surgery to repair his fractured acetabulum of the right hip; the fractured portion of the acetabulum was rejoined by one large screw with a washer and several springs. After surgery he remained in traction for 4 weeks. His initial hospitalization was for 38 days.
Upon release from the hospital, Lee began 10 months of physical therapy and slowly graduated from the use of crutches to a walker. For two years he remained in constant pain from his hip, and on February 14, 1984, Dr. J. Frazer Gaar, an orthopaedist, hospitalized Lee for total hip replacement. This surgery required the removal of the femoral head and the installation of a metal prosthesis, which included the femoral head and socket. He was hospitalized for 29 days and was in skeletal traction for the entirety of his hospital stay. After release from the hospital, Lee was required to use nonweight-bearing crutches for approximately 4 months. Lee now walks with a permanent limp. Dr. Gaar assigned a 25-30% permanent impairment to Lee, found him totally and permanently disabled, and opined that in all likelihood Lee would need another hip replacement within 10 years.
Considering the three serious operations Lee underwent, the severe pain endured, his permanent limp, his permanent physical impairment, his increased susceptibility to infection due to the loss of his spleen, and his surgical scarring, we can not say that the trial court overstepped its bounds in awarding Lee $225,000 for general pain and suffering.

FUTURE MEDICAL EXPENSES
DOTD contends that the trial court abused its discretion in making a $7,500 award for future medical expenses. It argues that the medical testimony is too speculative on this point, and furthermore, even if future surgery is required, there is no testimony regarding the cost of future hospitalization.
Future medical expenses must be established with some degree of certainty. Gaspard v. Breaux, 413 So.2d 288 (La.App. 3rd Cir.1982). Awards for future medical expenses are made only with supporting medical testimony and estimations of their probable cost. Poche v. Frazier, 232 So.2d 851 (La.App. 4th Cir.1970), writ denied, 256 La. 266, 236 So.2d 36 (1970). It is likewise established that an award for future medical expenses, like loss of future wages, is in great measure highly speculative and not susceptible of calculation with mathematical certainty. Gaspard, supra at 292.
Dr. Gaar testified that in persons of Lee's age the projected life expectancy of a hip prosthesis is approximately 10 years, and that the surgical fee for this procedure would approximate $3,000 to $3,500.
DOTD argues that the trial court stated in its reasons for judgment that although there was no specific testimony about the future costs of hospitalization for such a hip replacement, it relied upon documentation admitted into evidence regarding the current costs in arriving at its total award for future medical expenses. DOTD contends that this is impermissible.
Considering the evidence, we do not find that the trial court abused its discretion in making this award for future medical expenses. *325 Its reliance upon the present hospital costs for this same procedure was not erroneous because evidence, once admitted, is considered for all purposes, unless otherwise stipulated.

LOSS OF WAGES
DOTD argues that the economist, Dr. G. Randolph Rice, improperly based his figures for past and future loss of income on the assumption that Lee would receive cost of living increases when, at the time of the accident, he was not receiving such increases. DOTD further argues that the expert testimony is too speculative on the loss of future wages because Lee was pursuing a master's degree and would have earnings in the future which were greater than those he was making at the time of the accident.
At the time of the accident, Lee was 49 years of age, and was employed by Solid Control, Inc. and Mud Doctors, Inc. as a public relations representative and a salesman at a monthly salary of $2,000. In addition, he received certain hospitalization benefits and participated in a profit sharing plan.
Lee, a college graduate who held a Louisiana teaching certificate prior to the accident, returned to teaching in November 1985, three and one-half years after the accident, at Belmont Academy, a private school, at a monthly salary of $1,000 which was paid only 9 months during the year. In 1984, Lee returned to college to become re-certified as a vocational-agriculture teacher, and he sought further certification as a social studies teacher with the hope of obtaining his master's degree within the next four years.
DOTD contends that the expert testimony erroneously calculated the past loss of income, based on an assumption that Lee would receive cost of living increases to offset the impact of inflation. Based on this factor, the trial court awarded $83,741 for loss of past wages, a figure adjusted downward to reflect the $1,000 per month Lee received for 10 months after the accident from Solid Control, Inc. and the $1,000 per month he began receiving in November 1985 when he began teaching at Belmont.
Though loss of past income is more susceptible to exact mathematical calculation, in Folse v. Fakouri, 371 So.2d 1120 at 1123 (La.1979), the Supreme Court stated:
"The jury was entitled to determine from these and other factors in the record the probabilities and estimates of plaintiff's ability to earn money. What plaintiff earned before and after the injury does not constitute the measure ... And while his earning capacity at the time of the injury is relevant, it is not necessarily determinative of his future ability to earn. Damages should be estimated on the injured person's ability to earn money, rather than what he actually earned before the injury." (Citations omitted.)
The record reflects that in other employment prior to the accident Lee received cost of living increases. We conclude that it was not clear error for the trial court to consider inflationary adjustments, i.e., cost of living adjustments, in the calculation of the loss of wages, past and future, even though at the time of the accident Lee was not being paid cost of living adjustments. Folse, supra.
The trial court also awarded Lee $123,672 for loss of future income. In Freeman v. Harold Dickey Transport, Inc., 467 So.2d 194 at 196 (La.App. 3rd Cir.1985), we addressed the question of future loss of earnings and stated:
"Future loss of earnings is speculative and can not be calculated with absolute certainty. Damages for loss of future earnings or loss of future earning capacity is based on the injured person's ability to earn money, rather than on what he actually earned prior to the injury. Actual earning capacity at the time of injury, although relevant, is not necessarily determinative of the injured person's future ability to earn. In computing wage loss it is proper to base the economic computations on gross income.
Because of the speculative nature of an award for future loss of income there is no right formula in arriving at an award. Rather, the trial court must exercise *326 sound discretion and award an amount that is fair to both litigants while not being unduly oppressive to either. In reaching an award for lost wages the trial court should consider the following factors: the injured party's age, life expectancy, work life expectancy, any discount rate and inflation factor which may be applicable, the annual wage rate increase, probable future earning capacity, and the loss of future earning ability and capacity." (Citations omitted.)
Considering Lee's 9.61 years of work-life expectancy, his return to work at one-half the salary he was earning prior to the accident, the various discount and inflationary factors, we can not say the trial court erred in its assessment of Lee's loss of future income. DOTD's reliance upon Lee's return to college to earn his master's degree does not adversely affect our conclusion because the testimony is too speculative that the degree would be successfully earned and, if earned, what his projected pay might be.

COURT COSTS
DOTD contends that the trial court abused its discretion in allocating all of the court costs to it even though the various parties to this litigation were each assessed some degree of responsibility for the accident.
LSA-C.C.P. Art. 1920 provides:
"Unless the judgment provides otherwise, costs shall be paid by the party cast, and may be taxed by a rule to show cause. Except as otherwise provided by law, the court may render judgment for costs, or any part thereof, against any party, as it may consider equitable."
We have liberally interpreted LSA-C.C.P. Art. 1920 to give the trial court broad discretion in the assessment of costs and also in apportioning costs as it deems equitable. Lognion v. Calcasieu Parish Police Jury, 503 So.2d 1092 (La.App. 3rd Cir. 1987), writ denied, 507 So.2d 227 (La.1987). Although plaintiff and MOPAC were also cast at fault in causing the accident, we do not find that the trial court abused its discretion by imposing costs solely upon DOTD.

RELEASE
DOTD argues that the settlement entered into between Lee and MOPAC on April 8, 1986, constituted a release of all claims against it because there was no reservation of rights against it in the document. We disagree.
Former LSA-C.C. Art. 2203 provided that the release of one solidary obligor had the effect of releasing all solidary obligors unless the creditor expressly reserved rights against the others. This article was repealed upon the enactment of LSA-C.C. Art. 1803 which became effective on January 1, 1984. LSA-C.C. Art. 1803 now provides that the remission of the debt as to one solidary obligor benefits the other solidary obligor in the amount of the portion of the released obligor, and it is clear that now the remission of debt in favor of one obligor does not extinguish the solidary obligation. See Comments (a) to LSA-C.C. Art. 1803.
The release between Lee and MOPAC provided:
"... release, acquit and forever discharge Missouri Pacific Railroad Company, its employees and their heirs, its executors, administrators, successors and assigns, from any and all past, present and/or future claims, demands, losses, damages, medical expenses, disability benefits, subrogation claims, causes of action and rights of action whatsoever, known and unknown, anticipated and unanticipated, which appearers may or might have and/or to which they may be entitled, in any way resulting from and/or to result from a vehicle-train collision which occurred on or about February 2, 1982 ..."
In its reasons for judgment the trial court held that the date of the execution of the settlement or release document was the controlling date as to what law applied; accordingly, it applied LSA-C.C. Art. 1803 and held that the document did not release DOTD.
*327 In the case sub judice, the settlement was entered into well after the effective date of LSA-C.C. Art. 1803, and under the provisions of that article it is clear that the only party released was MOPAC. Accordingly, we find that the trial court was correct in denying DOTD's exception of res judicata. We further find DOTD's reliance upon Land and Offshore Company v. Martin, 469 So.2d 1177 (La.App. 3rd Cir. 1985), and Migliore v. Traina, 474 So.2d 980 (La.App. 5th Cir.1985), misplaced. In Land and Offshore we held that there was no release involved, and in Migliore it is clear that the accident and releases involved therein occurred prior to the effective date of LSA-C.C. Art. 1803.
For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed to DOTD.
AFFIRMED.