NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

CA 20-259

ROBERT BROUSSARD AND

R.J. BROUSSARD GENERAL

CONTRACTORS INC.

VERSUS

MULTI-CHEM GROUP, LLC, ET AL.

**********

APPEAL FROM THE
SIXTEENTH JUDICIAL DISTRICT COURT
PARISH OF IBERIA, NO. 118902
HONORABLE ANTHONY THIBODEAUX, DISTRICT JUDGE

**********

BILLY HOWARD EZELL
JUDGE

**********

Court composed of Elizabeth A. Pickett, Billy Howard Ezell, and D. Kent Savoie, Judges.

AFFIRMED.

**Edward P. Landry**
**Kreig A. Breaux**
**Landry, Watkins, Repaske & Breaux**
**211 Main Street**
**PO Box 12040**
**New Iberia, LA 70562-2040**
**(337) 364-7626**
**COUNSEL FOR PLAINTIFFS/APPELLEES:**
    **Creig Fowler**
    **Calvin J. Segura, Sr.**

**Tobin James Eason**
**Weiss & Eason, LLP**
**PO Box 8597**
**Mandeville, LA 70470**
**(985) 626-5358**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
    **K & J, LLC, et al**

**Theodore Michael Haik, Jr.**
**Haik, Minvielle & Grubbs**
**P. O. Box 11040**
**New Iberia, LA 70562-1040**
**(337) 365-5486**
**COUNSEL FOR PLAINTIFFS/APPELLEES:**
    **R.J. Broussard General Contractors, Inc.**
    **Robert Broussard**

**Jo Ann Nixon**
**Glenda August & Assoc.**
**129 W. Pershing St.**
**New Iberia, La 70560**
**(337) 369-7437**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
    **K & J, LLC, et al**

**Richard G. Duplantier, Jr.**
**Jason E. Wilson**
**Galloway, Johnson, Tompkins, Burr & Smith**
**One Shell Square, Suite 4040**
**701 Poydras Street**
**New Orleans, LA 70139**
**(504) 525-6802**
**COUNSEL FOR DEFENDANTS/APPELLANTS:**
    **Nathan Walker**
    **Cade Bourque**
    **Aaron Gauthier**
    **Multi-Chem Group, LLC**
    **John Gauthier**

**Louis Clayton Burgess**
**605 W. Congress St.**
**Lafayette, LA 70501**
**(337) 234-7573**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
    **K & J, LLC, et al**

**Derriel Carlton McCorvey**
**102 Versailles Blvd, Ste. 620**
**Lafayette, La 70501**
**(337) 291-2431**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
    **K & J, LLC, et al**

**EZELL, Judge.**

Multi-Chem Group, L.L.C., Cade Bourque, John Gauthier, Nathan Walker, and Aaron Gauthier (hereinafter collectively referred to as "Multi-Chem.") appeal the decision of the trial court below awarding damages to Calvin Segura and Creig Fowler resulting from an explosion at the Multi-Chem chemical facility. For the following reasons, we hereby affirm the decision of the trial court.

On June 14, 2011, a fire broke out at the Multi-Chem facility in New Iberia, Louisiana, producing several explosions. "Numerous individuals described the scene, explaining that they witnessed debris, including drums and containers, flying into the air due to those explosions." *Broussard v. Multi-Chem Grp., LLC*, 17-985, 17-986, 17-987, 17-988, 17-989, 17-990, 17-991, 17-992, p. 1 (La.App. 3 Cir. 7/11/18), 255 So.3d 661, 666, *writ denied*, 18-1347 (La. 11/14/18), 256 So.3d 258. The fire resulted in a chemical plume that required evacuation of the area within a mile radius of the facility. Multiple toxic chemicals were released. "Cade Bourque, Multi-Chem's Health, Safety, and Environmental Director at the time, confirmed that the facility housed 700,060 gallons of chemicals at the time of the fire and that the close proximity of its storage vessels contributed to multiple explosions." *Id.* Mr. Segura and Mr. Fowler both worked at a K&J Supply Co., a business immediately adjacent to Multi-Chem, and were subject to the fall out of the explosion.

Multiple suits resulted from the fire, which were handled in multiple phases based on proximity to Multi-Chem. Liability for the fire was stipulated to by Multi-Chem. Most of the plaintiffs located within a mile of Multi-Chem were involved in Phase 1 and handled in a Bellwether manner (these plaintiffs will hereinafter be referred to as Phase 1 plaintiffs). However, Mr. Segura and Mr. Fowler were specifically excluded from that litigation due to their increased damages caused by

their prolonged exposure, as they were the last to leave K&J and were subjected to the chemical plume for longer than prior plaintiffs in other related litigation.

After trial on the matter, the trial court awarded Mr. Segura past medical expenses in the amount of $157,406.09 and future medical expenses in the amount of $200,000.00. Mr. Segura also received $600,000.00 in past and future mental anguish, pain and suffering, and loss of enjoyment of life. Mr. Fowler was awarded $250,000.00 in in past and future mental anguish, pain and suffering, and loss of enjoyment of life, as well as $20,000.00 for fear of developing cancer. From those awards, Multi-Chem appeals.

On appeal, Multi-Chem asserts four assignments of error. The first two claim that the trial court erred in deviating from the law of the case in awarding the Plaintiffs higher awards than the prior Phase 1 plaintiffs, and that the trial court failed to follow Louisiana precedent in awarding damages. Because these assignments of error overlap greatly, they will be addressed together. Multi-Chem also claims that the trial court erred in admitting and relying on the testimony of Caroline Boudreaux, and that the trial court erred in finding Mr. Segura met his burden of proof on past and future medical expenses.

Mr. Segura and Mr. Fowler answer the appeal, asserting that the damage awards were insufficient.

## THE TESTIMONY OF CAROLINE BOUDREAUX

As the assignment of error concerning the admission of the testimony of Ms. Boudreaux directly affects the remaining assignments of error, we will address that first. Multi-Chem claims that the trial court erred in admitting and relying on the testimony of Ms. Boudreaux.

Louisiana Code of Evidence Article 702 is pertinent to these claims, providing that:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(1) The expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(2) The testimony is based on sufficient facts or data;

(3) The testimony is the product of reliable principles and methods; and

(4) The expert has reliably applied the principles and methods to the facts of the case.

The Louisiana Supreme Court has recognized that Article 702 now codifies *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), which addresses the methodology employed by prospective experts. *See Freeman v. Fon's Pest Mgmt., Inc.*, 17-1846 (La. 2/9/18), 235 So.3d 1087. Of course, a trial court is accorded broad discretion in its determinations of whether expert testimony should be admissible. *Cheairs v. State, Dep't of Transp. & Dev.*, 03-0680 (La. 12/3/03), 861 So.2d 536.

*Broussard*, 255 So.3d at 671. The trial court has "wide discretion" to admit expert testimony, and "its rulings should not be reversed in the absence of clear error." *Holzenthal v. Sewerage & Water Bd. of New Orleans*, 06-796, 06-797, 06-798, p. 29 (La.App. 4 Cir. 1/10/07), 950 So.2d 55, 73-74, *writ denied*, 07-294 (La. 3/30/07), 953 So.2d 71. "This discretion is even greater in a bench trial." *Id*. at 74. This also applies to the trial court's *Daubert* analysis because "to do otherwise would hamstring the trial court's discretionary authority." *Johnson v. Melton*, 03-1132, pp. 6-7 (La.App. 4 Cir. 2/4/04), 867 So.2d 804, 808, *writ denied*, 04-562 (La. 4/23/04), 870 So.2d 303.

Ms. Boudreaux testified that she was a CPA for thirty-nine years and participated in litigation in both state and federal courts during that time. She stated

3

that she had specialties in the areas of calculating economic losses, including lost wages, benefits, and medical expenses. She stated that she calculated Mr. Segura's losses using accounting formulas, itemized medical invoices, and discussions with Dr. George Sagrera. She received invoices from all hospitals and providers concerning charges Dr. Sagrera related to the accident. She calculated Mr. Segura's future medical expenses based on his past medical charges, his future life expectancy, and discussions with Dr. Sagrera concerning Mr. Segura's future medical outlook. The trial court accepted both Ms. Boudreaux and Multi-Chem's economist, Charles Theriot, as experts, heard their methods and testimony, and clearly chose between them. We can find no abuse of the trial court's discretion in the admission of Ms. Boudreaux's testimony.

### MR. SEGURA'S MEDICAL EXPENSES

Next, Multi-Chem claims the trial court erred in finding Mr. Segura met his burden of proof as to past and future medical expenses.

> [T]he plaintiff in a toxic tort suit has the burden of proving that the offending substances caused his or her injury. *Bradford* [*v. CITGO Petroleum Corp.*, 17-296 (La.App. 3 Cir. 1/10/18), 237 So.3d 648, *writ denied*, 18-0272 (La. 5/11/18), 241 So.3d 314] (citing *Knight v. Kirby Inland Marine, Inc.*, 482 F.3d 347 (5th Cir. 2007); *Berzas v. OXY USA, Inc.*, 29,835 (La.App. 2 Cir. 9/24/97), 699 So.2d 1149). In *Arabie v. CITGO Petroleum Corp.*, 10-2605, p. 19 (La. 3/13/12), 89 So.3d 307, 321, the supreme court framed the issue of causation as "whether the plaintiff proved through medical testimony that it was more probable than not that subsequent injuries were caused by the accident." The supreme court further analyzed the causation issue before it upon consideration of the plaintiffs' testimony regarding the circumstances of their symptoms upon exposure, along with expert opinion and medical records. *Id*.

*Broussard*, 255 So.3d at 686.

Applying the manifest error standard to an award of special damages, such as medical expenses, requires the appellate court to employ a two-step analysis based

4

upon the entire record. First, we must conclude that there is no reasonable factual basis for the trial court's award, and second, we must conclude that the award is clearly wrong. *Kaiser v. Hardin*, 06-2092 (La. 4/11/07), 953 So.2d 802.

Multi-Chem claims in brief that Mr. Segura failed to prove a causal relationship between the accident and his injuries. This is directly contrary to the testimony of Mr. Segura's treating physician, Dr. George Sagrera, who clearly stated that he attributed Mr. Segura's COPD directly to the fire and resulting exposure to toxic chemicals. He noted that he infrequently saw Mr. Segura for issues such as colds or back problems prior to the fire, but has seen him regularly since to treat his worsening breathing problems. He stated that Mr. Segura showed no signs of COPD until the fire and that he has since gone from normal to permanently disabled. The trial court clearly believed Dr. Sagrera's testimony over defense experts, as he is Mr. Segura's treating physician. Thus, Dr. Sagrera provided the needed medical testimony that it was more probable than not that Mr. Segura's injuries were caused by the chemical fire and, therefore, a reasonable factual basis for the trial court's determination. Accordingly, we find no error in that finding.

Multi-Chem further asserts in brief that Mr. Segura's past medical bills were admitted over their objection and not linked to his exposure, yet Multi-Chem does not cite one dollar in charges which it claims is unrelated to this matter. As a general rule, trial courts are afforded great discretion concerning the admission of evidence, and their decisions to admit or exclude evidence should not be reversed on appeal in the absence of an abuse of their discretion. *Medine v. Roniger*, 03-3436 (La. 7/2/04), 879 So.2d 706.

We find no abuse of discretion in the trial court's admission of Mr. Segura's past medical bills, especially as Multi-Chem has not pointed to any charges it deems

5

unconnected to this suit. Moreover, Multi-Chem's assertion that Ms. Boudreaux, a thirty-nine-year CPA, could not correctly tabulate past medical bills without possessing specific medical knowledge to examine the underlying medical necessity of each treatment billed for is patently absurd. Yet again, Multi-Chem points to no single charge it claims to be incorrectly included in the award. This claim is devoid of merit.

The crux of Multi-Chem's argument on medical awards concerns Ms. Boudreaux's ability as an expert to opine as to the future medical expenses Mr. Segura would require. As discussed above, the trial court did not err in allowing her to testify as to these issues and clearly took her testimony as more credible than that of Multi-Chem's expert, Charles Theriot. Moreover, pursuant to the manifest error standard of review, where there are two permissible views of the evidence, such as were presented by the two experts herein, the fact finder's choice between them cannot be manifestly erroneous or clearly wrong. *See Rosell v. ESCO*, 549 So.2d 840 (La.1989).

In order to recover future medical expenses, the appellate record must establish that future medical expenses will be necessary and inevitable. *Levy v. Bayou Indus. Maint. Servs., Inc.*, 03-37 (La.App. 1 Cir. 9/26/03), 855 So.2d 968, *writs denied*, 03-3161 (La. 2/6/04), 865 So.2d 724, 03–3200 (La. 2/6/04), 865 So.2d 727. "An award of future medical expenses will not be supported in the absence of medical testimony that they are indicated and setting out their probable cost." *Jenkins v. State ex rel. DOTD*, 06-1804, p. 43 (La.App. 1 Cir. 8/19/08), 993 So.2d 749, 776, *writ denied*, 08-2471 (La. 12/19/08), 996 So.2d 1133. As noted in *Menard v. Lafayette Insurance Co.*, 09-1869, pp. 13-14 (La. 3/16/10), 31 So.3d 996, 1006-07 (first and ninth alterations in original):

> [w]hen the record establishes that future medical expenses will be necessary and inevitable, the court should not reject an award of future medical expenses on the basis that the record does not provide the exact value of the necessary expenses, if the court can examine the record and determine from evidence of past medical expenses and other evidence a minimum amount that reasonable minds could not disagree will be required.

*Stiles* [*v. K Mart Corp.*, 597 So.2d 1012, 1012 (La.1992)]. The proper standard for determining whether a plaintiff is entitled to future medical expenses is proof by a preponderance of the evidence the future medical expense will be medically necessary. *Hoskin v. Plaquemines Parish Gov't*, 97-0061 (La.App. 4 Cir. 12/1/97), 703 So.2d 207, 211, *writ denied,* 98-270, 98-271 ([La.] 4/3/98), 717 So.2d 1129.

Notably, it is well acknowledged an award for future medical expenses is in great measure highly speculative and not susceptible to calculation with mathematical certainty. *Highlands* [*Ins. Co. v. Missouri Pacific R. Co.*, 532 So.2d 317, 324 (La.App. 3d Cir.1988), *judgment affirmed sub nom. Lee v. Missouri Pacific R. Co.*, 540 So.2d 287 (La.1989)]. It follows, therefore, such awards "generally do not involve determining the amounts, but turn on questions of credibility and inferences, i.e., whose experts and other witnesses does the jury believe?" [Frank L. Maraist & Thomas C. Galligan, Jr., *Louisiana Tort Law*], § 7.02, 7–4.

In accordance with well-established law, much discretion is left to the judge or jury in its assessment of quantum, both general and special damages. La. Civ.Code. art. 2324.1 ("In the assessment of damages in cases of offenses, quasi offenses . . . much discretion must be left to the judge or jury."); *Guillory* [*v. Lee*], 09-0075 at p. 14, 16 So.3d [1104], 1116. As a determination of fact, a judge's or jury's assessment of quantum, or the appropriate amount of damages, is one entitled to great deference on review. *Guillory*, 09-0075 at p. 14, 16 So.3d at 1116; *Wainwright* [*v. Fontenot*, 00–0492, p. 6 (La.10/17/00), 774 So.2d 70, 74].

> [T]he reviewing court must give great weight to factual conclusions of the trier of fact; where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. The reason for this well-settled principle of review is based not only upon the trial court's better capacity to evaluate live witnesses (as compared with the appellate court's access only to a cold record), but also upon the proper allocation

> of trial and appellate functions between the respective courts.

> *Guillory*, 09–0075 at p. 14, 16 So.3d at 1116–17 (quoting *Perkins v. Entergy Corp.*, 00–1372 (La.3/23/01), 782 So.2d 606). "Because the discretion vested in the trier of fact is so great, and even vast, an appellate court *should rarely disturb* an award on review." *Guillory*, 09-0075 at p. 14, 16 So.3d at 1117 (emphasis added).

The record before us shows that Ms. Boudreaux testified Mr. Segura's future medical expenses would be estimated using his future life expectancy to be $175,907.79. Dr. Sagrera further testified that Mr. Segura could easily approach $500,000.00 in future medical expenses, especially if he were to ever need to be placed on a ventilator. Dr. Sagrera testified that Mr. Segura was already on oxygen and would be for the rest of his life, that he would require a nebulizer for the rest of his life, and that at times he visited urgent cares almost weekly, especially during hot weather. He further stated that Mr. Segura had already been hospitalized several times due to his worsening COPD, taken many times by ambulance, that his situation was permanent and irreversible, and that his health would continue to deteriorate in the future. Dr. Sagrera stated that Mr. Segura would continue to need to go to emergency rooms and urgent cares for the rest of his life. This testimony establishes that future medical expenses for Mr. Segura will be necessary and inevitable. While the trial court's award of $200,000.00 in future medical expenses is higher than the amount stated by Ms. Boudreaux, in light of Dr. Sagrera's testimony, it is supported by the record and not an abuse of the trial court's great discretion. Accordingly, we can find no error in the award. This assignment of error is without merit.

## GENERAL DAMAGE AWARDS

Multi-Chem next claims that the trial court erred in in its award of general damages to Mr. Segura and Mr. Fowler, especially since the awards were higher than the other plaintiffs in the Phase 1 Bellwether group. We disagree.

We initially note that Multi-Chem claims, without authority, that Mr. Segura and Mr. Fowler should be held to recoveries in line with those made to Phase 1 Plaintiffs from the earlier part of this litigation under the law of the case doctrine. However, that doctrine has no application here, as no rulings have been made as to the damages of these two men. This is in no way relitigating of the same issue or facts. Mr. Segura and Mr. Fowler were specifically withheld from the initial Phase 1 group of litigants and had their trial later specifically because their injuries, pathologies, and medical treatments were deemed to be dissimilar from those prior Plaintiffs. Multi-Chem knowingly agreed to that arrangement and cannot cast that choice aside now. To limit Mr. Segura and Mr. Fowler to the recoveries made by Plaintiffs with separate and distinguishable facts would be patently unjust. Accordingly, Mr. Segura and Mr. Fowler are not constrained in any way by the recoveries made by those Plaintiffs in the earlier Phase 1, and Multi-Chem's assertion otherwise is devoid of merit.

"[I]n making damage awards, the discretion of the trier of fact is great, and even vast, so that an appellate court should rarely disturb an award of general damages." *Johnson v. Manuel*, 95-913, p. 5 (La.App. 3 Cir. 1/31/96), 670 So.2d 273, 277, *writ denied*, 96-540 (La. 4/19/96), 671 So.2d 919. Further, "[i]n reviewing a damage award, the initial inquiry is whether the award for the particular injuries and their effects under the particular circumstances on the particular injured person is a clear abuse of the much discretion of the trier of fact." *Id*. (citing *Youn v. Maritime*

*Overseas Corp.*, 623 So.2d 1257 (La.1993), cert. denied, 510 U.S. 1114, 114 S.Ct. 1059 (1994)). When considering the standard of review for a general damages award in *Duncan v. Kansas City Southern Railway Co.*, 00-66, pp. 13-14 (La. 10/30/00), 773 So.2d 670, 682-83, *cert. denied*, 532 U.S. 992, 121 S.Ct. 1651 (2001), the Louisiana Supreme Court stated:

> The initial inquiry, in reviewing an award of general damages, is whether the trier of fact abused its discretion in assessing the amount of damages. *Cone v. National Emergency Serv. Inc.*, 99-0934 (La. 10/29/99), 747 So.2d 1085, 1089; *Reck v. Stevens*, 373 So.2d 498 (La.1979). Only after a determination that the trier of fact has abused its "much discretion" is a resort to prior awards appropriate and then only for the purpose of determining the highest or lowest point which is reasonably within that discretion. *Coco v. Winston Indus., Inc.*, 341 So.2d 332 (La.1976).

## MR. SEGURA

Multi-Chem claims that the trial court erred in its award of general damages to Mr. Segura. We disagree.

Mr. Segura testified he had no breathing problems prior to the fire. Now, his COPD, frequently causes him to be unable to breathe. He must sleep using an oxygen tank. He has been hospitalized several times because of the COPD and the attacks cause him great and ongoing fear when his airway becomes restricted. He stated his sex life with his wife has been affected by his shortness of breath.

Dr. Sagrera testified that Mr. Segura was hospitalized multiple times for multiple days due to COPD attacks. These attacks involved acute breathing restrictions that caused severe anxiety, as the inability to breathe triggers understandable panic, and has even caused Mr. Segura to pass out. Mr. Segura requires medication for this anxiety. That anxiety has further caused Mr. Segura to suffer stress ulcers which have resulted in him going to the hospital for vomiting dried blood. Mr. Segura is unable to work for the rest of his life, as he is permanently

and irreversibly disabled.  According to Dr. Sagrera, Mr. Segura cannot tolerate heat or dusty conditions, cannot run, climb stairs, or have sex.  His COPD can be triggered by hot showers.  Mr. Segura now suffers from obstructive sleep apnea.  Dr. Sagrera stated Mr. Segura's condition will only worsen with time and his breathing will become more labored.  He will require oxygen and nebulizers for the remainder of his days.  Mr. Segura developed new onset diabetes as a result from the steroid medication he must take to battle his COPD, further diminishing his health, though his condition required he stay on those medications for life.  Dr. Sagrera stated that Mr. Segura's life will slowly and painfully deteriorate further still, until his death.  Dr. Sagrera testified this decline was because of his exposure to particulates and fumes from the fire at the Multi-Chem facility.

Based on the record before us, we find no abuse of the trial court's much discretion in its awards for Mr. Segura's pain and suffering.

## MR. FOWLER

Finally, Multi-Chem challenges the award of damages to Mr. Fowler.  It challenges both the trial court's general damage award and the award for his fear of cancer.  We disagree on both points.

## GENERAL DAMAGES

Multi-Chem claims that the trial court erred in awarding Mr. Fowler $250,000.00 in general damages for pain, suffering, and mental anguish, rather than $17,000.00 awarded to other Phase 1 Plaintiffs, particularly Dodie Boudreaux.  We disagree.  Multi-Chem bases its claim on the fact that Ms. Boudreaux developed nodules on her vocal cords, but only got the much smaller award.  This comparison is disingenuous at best.  The record has no indication whatsoever that Ms. Boudreaux

11

required any surgery for her nodules, while Mr. Fowler endured multiple invasive and painful surgeries to remove his multiple lesions.

Mr. Fowler's first surgery removed an approximately one-half-inch pyogenic granuloma lesion from his nose. This was found by Dr. James Walker, his ENT, after he began having multiple nosebleeds a day and his nose becoming tender to the touch. The granuloma, according to Dr. Walker, was caused by chemical irritants from the fire. After surgery, Mr. Fowler had a recovery spanning multiple months, including several visits to have scab tissue painfully removed from his nose to prevent infection. Ms. Boudreaux endured no such surgery.

Dr. Walker further found and actually surgically removed multiple lesions from Mr. Fowler's throat and vocal cords. Removal of all lesions, including the one in Mr. Fowler's nose, was warranted because they were potentially cancerous. Dr. Walker linked all the lesions to exposure to chemicals from the fire. Mr. Fowler further endured multiple endoscopic examinations to check for new growths, and Dr. Walker stated that he will require more in the future. Mr. Fowler also was referred to Dr. Richard Fei, a pulmonologist, who found restrictive lung disease. None of these problems existed prior to the explosion. Again, these issues were not present with Ms. Boudreaux.

Further distinguishing Mr. Fowler's award from Ms. Boudreaux's was the extreme stress placed directly on Mr. Fowler as a result of the fire affecting his business during the clean-up period. Mr. Fowler and his family owned and operated K&J. His five to six-million-dollar-a-year business had to be stopped and restarted in a new place in approximately forty-eight hours. He had no phones to contact clients or computers for almost two weeks. Mr. Fowler testified that he was forced to relocate to a temporary space roughly one-third the size of his warehouse, which

caused him to lose business. That temporary warehouse even flooded at one point. Mr. Fowler stated he lost fifty percent of his business from his largest three clients and competitors rushed to fill the vacuum created by his inability to fill orders. He was forced to sell at losses to compete and could enter his own property only with the permission of Multi-Chem's attorneys. He felt his family business was dying and suffered severe anxiety about potential bankruptcy, causing him to lose sleep and time with his family as he scrambled to keep it above water. Even returning to the building created additional stress and anxiety, as the facility had to be cleaned and repaired, phones and computers transferred, and the warehouse restocked. This stress likely caused Mr. Fowler to develop GERD, which he did not have prior. None of these problems or stresses existed in Ms. Boudreaux, making that comparison unpersuasive.

Therefore, the record before this court contains ample evidence to support the trial court's finding that Mr. Fowler experienced far more pain, suffering, and anxiety than the other Phase 1 Plaintiffs Multi-Chem compares him to. The trial court did not abuse its vast discretion in making its general damages award to him.

### FEAR OF CANCER

Multi-Chem finally claims that Mr. Fowler's fear of cancer award of $20,000.00 was in error because it exceeded the $7,000.00 amount awarded the other Plaintiffs. Again, we disagree. Multi-Chem claims that there is a lack of clear testimony that Mr. Fowler fears cancer in the future. The record shows the opposite, as Mr. Fowler directly testified that he has concerns about cancer that will continue into the future, stating that he thinks about the possibility of cancer on a regular basis. Comparisons to the fear of cancer award for Ms. Boudreaux by Multi-Chem are as misplaced here as they were for the general damage award as, again, there is no

13

indication that Ms. Boudreaux had or will need surgery for her nodules, while Mr. Fowler has had two surgeries to remove three growths. These surgeries took place specifically because of his doctor's concern that they were or could become cancerous. Dr. Walker, testified that in addition to the roughly one-half-inch lesion he removed from Mr. Fowler's nose, he removed a hyperplastic polyp from Mr. Fowler's throat, which "can be a precursor to the next stage of cancer . . . dysplasia." Dr. Walker stated that he discussed Mr. Fowler's fears of life-threatening conditions arising from the exposure multiple times and that the exposure to the chemicals in the explosion did, in fact, put Mr. Fowler at a higher risk of cancer, making these fears well-founded. Dr. Walker stated that Mr. Fowler should continue to get check-ups to watch for new growths and lesions in the future because of these concerns. Accordingly, there is ample evidence in the record before this court to show that Mr. Fowler's fear of cancer award could be greater than that of Ms. Boudreaux and the other Plaintiffs, as his direct medical history warranted heightened concern. The trial court did not abuse its discretion in this award.

## ANSWER TO APPEAL

Lastly, Mr. Segura and Mr. Fowler answer the appeal of Multi-Chem, claiming that the trial court's awards were insufficient. For the reasons discussed above, the trial court's awards to both men were supported by the record and did not constitute an abuse of discretion. Just as there is nothing in the record that indicates that the awards were abusively high, there is nothing in the record that indicates that the awards were abusively low. Their answer is also without merit.

14

For the above reasons, the decision of the trial court below is hereby affirmed.

Costs of this appeal are hereby assessed against Multi-Chem.

**AFFIRMED.**

This opinion is NOT DESIGNATED FOR PUBLICATION.
Uniform Rules—Courts of Appeal, Rule 2-16.3.